RUSSELL *v.* FARRELL.

(*Jackson.*   April 12, 1899.)

1. EVIDENCE.   *Practice of admitting incompetent reprobated.*

The practice of permitting incompetent testimony, in this instance an alleged newspaper interview, without authentication, under a promise of subsequently ruling it out if it is not made competent, is of doubtful propriety at best, and should be permitted only in exceptional cases for expediting trials, when the probability is great of supplying evidence of competency.   (*Post, pp. 252, 253.*)

Case cited and approved: Dawson *v.* Holt, 11 Lea, 583.

2. LIBEL.   *Defendant's post litem statement not admissible, when.*

A publication made by defendant concerning the plaintiff, pending an action for libel, is inadmissible when it is neither a confession or explanation of the libel sued on nor an admission of malicious intent in writing and publishing it.   (*Post, pp. 251–253.*)

Case cited and approved: Saunders *v.* Baxter, 6 Heis., 369.

3. SAME.   *Erroneous charge as to justification.*

In an action of libel, where there is no plea of justification, and no effort made to prove the truth of the libelous language, it is reversible error for the Court to charge that proof of the truth of the language used was a complete defense and that the burden was upon the defendant to make such proof.   (*Post, pp. 253, 254.*)

Cases cited and approved: Railroad *v.* Collins, 85 Tenn., 227; Railroad *v.* Lee, 90 Tenn., 570; Railroad *v.* Pugh, 95 Tenn., 419.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County.   L. H. ESTES, J.

FINLAY & FINLAY and J. R. BOYLE for Russell.

JAS. M. GREER for Farrell.

McFARLAND, Sp. J.   This is an action of dam-
ages for libel, brought in the Circuit Court of Shelby
County.   The declaration alleges that J. H. Farrell,
the plaintiff below, had been Deputy Sheriff of Shelby
County prior to September 1, 1896, at which time
W. W. Carnes had been elected a Sheriff; that de-
fendant, V. C. Russell, "published in writing to
said Sheriff and divers others the following state-
ment, viz.: That plaintiff, while acting Deputy Sheriff
of Shelby County, Tennessee, did collect costs in an
action wherein this defendant was a party twice,"
and that the inevitable result of such publication
was to injure plaintiff in his said office, and that
this the defendant knew and intended such result.
To this the defendant plead not guilty.

Subsequently, by leave of Court, the plaintiff filed
an amended declaration, in which he repeats substan-
tially the allegations of the first declaration, and
added, as new matter, that since the bringing of
this action, the defendant, Russell, had caused to be
printed a libelous, scurrilous, false, and malicious
statement in a certain newspaper, the *Evening
Herald*, printed in Memphis, the substance of which
was a statement of the controversy between himself
and Farrell leading up to the libel suit.   In this
publication in the *Evening Herald*, purporting to be
an interview with Russell, the statement nowhere

Russell *v.* Farrell.

appears that Russell charged Farrell with collecting costs twice, but that Farrell had said to him, Russell, that "I had paid to him his costs and those due the Justice also, showing him my books. Farrell did not deny the amount, which needed only five dollars to balance accounts;" that subsequently Esq. Haynes had demanded his costs, and Russell refusing to pay same, Haynes had sued the plaintiffs in the original suits—patrons of Russell, who was a real estate agent—and had collected these costs.

The article also describes a personal difficulty between Farrell and Russell in Haynes' office, in which Farrell had abused Russell, and threatened him with a pistol, and concludes: " When Sheriff Carnes was preparing to appoint deputies, I stated the above occurrence to him, and added that we desired better government; I did not approve of John Farrell being reappointed. Now, because Farrell could not get a reappointment, he wants to sue somebody." The article added, "Farrell has lately figured in several unfortunate cases," and this last statement is also charged to Russell in this amended declaration. To this amended declaration there was a plea of not guilty.

When the cause came on for trial, Farrell testified first, and offered to read this newspaper article, when its reading was objected to, and the Court finally permitted it to be read, saying, "I admit this solely upon the question of the state of Rus-

sell's mind toward Farrell to show malice; no recovery can be based upon it. I have decided that it cannot be ·pleaded in this suit by adding a new count. It being published since the summons was issued, it should have been made the subject of a new suit.'' The newspaper article was then read to the jury, over the objections of the defendant.

The cause then proceeded to final judgment upon the charges made in the general declaration, the substance of which was that Russell had written Carnes that Farrell, as an officer, collects costs twice. There was a verdict and judgment for $2,500, and, on motion for new trial, the Court directed a remittitur of $1,500, which was done, and motion for new trial overruled.

The first assignment of error is that the Court erred in admitting the newspaper article published after the institution of this suit, to be read to the jury. The objections urged to the reading of this article are: (1) That it was not sufficiently proven; (2) because it was published after the suit was brought, and was not an admission of the former libel or explanatory of same. The record shows, upon this first proposition, that the article was offered without any proof whatever of its authenticity, or even of its publication. The newspaper with this article was offered by plaintiff in connection with his testimony, confessedly knowing nothing about its origin, and the Court permitted it to be read, saying that unless there is some proof connecting the

defendant with it it must go out.    After plaintiff's
testimony was all in, and defendant, Russell, was on
the stand, he was asked by plaintiff's counsel as to
this interview, and he said he had not written it;
had nothing to do with the paper.    "A young man
came to me the next day after Farrell sued me,
and asked me to tell him what the facts were about
the case.    I told him just like anybody else would
do.    I may have told him what you have read to
me out of the paper, but I am positive I did not
say to him that Farrell had figured in several un-
fortunate cases lately.    I may have told him the
balance, I cannot say now."

Here is neither an admission nor denial, except
as to a part of this interview, and leaves its authen-
ticity and publication to rest alone upon itself.    The
Court erred, therefore, in permitting this evidence to
be read at all, and especially permitting this paper
to be read to the jury in the first instance, without
connecting defendant in any way with it, or first
proving its authenticity.    *Dawson & Campbell* v. *Holt,*
11 Lea, 583.    This practice of permitting incompe-
tent testimony to go to the jury, under promise of
subsequently ruling same out if it is not made com-
petent, is of doubtful propriety at best, and has
been frequently condemned by this Court.    It is
often hurtful to opposing litigants, even though ruled
out, and should be permitted only in exceptional
cases, for expediting trials, when the probability is
great of supplying evidence of competency.

Russell *v.* Farrell.

This evidence was inadmissible upon the second ground of the exception, because it was a publication subsequent to that sued on, and was neither an explanation of the letter written to Carnes nor an admission of malice in writing the first. The rule is thus laid down in *Saunders* v. *Baxter*, 6 Heis., 369, in which this subject was extensively discussed and the authorities reviewed. Says the Court, p. 392: "In view, therefore, of this great conflict and confusion of authority upon this question, and of the reasons of the law, we feel a sense of safety in adhering to our own rulings upon this subject, that a plaintiff in an action of libel cannot introduce in evidence for any purpose a publication of the defendant made subsequent to that sued on, unless the subsequent one be an explanation or confession of the former, or contain an express admission of the malicious intent in the first publication."

There is no admission in this newspaper interview that Russell had any malice in writing a letter to Carnes, nor is there any explanation in this of the particular libel complained of, to wit: "That Farrell had collected costs twice." The explanations, if such they may be called, are as to the facts leading up to the writing the letter and not of the letter. It was, therefore, incompetent, and it is reversible error because of its probable damaging effect upon the defendant before the jury.

It is also assigned as error, that the Court charged that if the jury found the facts alleged to be libelous

were true, then this was a complete defense, but that the burden of proving that the charge was true was upon the defendant. It is insisted that inasmuch as there was no plea of justification, nor effort to prove the truth of charges made, this charge was hurtful, and, being totally inapplicable, was error. We think this was error. *Railroad Co.* v. *Collins*, 1 Pickle, 227; *Railroad Co.* v. *Lee*, 6 Pickle, 570; *Railroad Co.* v. *Pugh*, 11 Pickle, 419.

For these reasons the judgment is reversed and the cause remanded with costs.