Street Railway Co. *v.* Dan.

STREET RAILWAY CO. *v.* DAN.

*(Jackson.*    April 19, 1899.)

1. STREET RAILROAD.    *Duty of motorman.*

In an action against a street railway company for negligently
crushing and killing a child with one of its cars, an instruc-
tion which states, in substance, that it is the duty of a motor-
man to keep a vigilant lookout for children on the street, and
upon the first appearance of danger, or probable collision with
any one of them, to stop his car in the shortest time and space
possible, is not subject to the criticism that it makes no allow-
ance for a sudden emergency, where it is apparent from the
context that the Judge simply meant that the motorman must
do all in his power under the emergencies then surrounding
him to save the child.    *(Post, pp. 321–325.)*

2. CHARGE OF COURT.    *As to sympathy of jury.*

A statement of the trial Judge, in his charge to the jury in an
action for the negligent killing of a child, that it was natural
for them to have, their sympathies aroused in behalf of the
suffering, while not altogether proper, is not cause for re-
versal, although he did not state in that immediate connection
that they must not allow their sympathies to enter into the
consideration of the case, when he was not asked to so charge,
- but did in fact so charge in another connection.    *(Post, pp.
326, 327.)*

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby
County.    L. H. ESTES, J.

Street Railway Co. *v.* Dan.

TURLEY & WRIGHT for Street Railway Co.

GANTT & PATTERSON for Dan.

WILKES, J.  This is an action for the killing of Mary Dan, a child four years of age, by the street railroad company.  It is brought by her father as administrator. . It was tried before the Court and a jury, and a verdict and judgment rendered for two thousand five hundred dollars, and the street car company has appealed.

The child was run over at the intersection of Second and Jackson Streets on a day when Mardi Gras was being celebrated, and the streets were crowded with men, women, and children.  The child ran upon the tracks and was run over by the car. There is a difference of statement as to how fast the car was going, and how far it ran after pass-- ing over the child.  It is not necessary to state the evidence fully, as it is apparent it is abundantly sufficient to support the verdict and judgment, and it must be affirmed, unless there is error in the action of the Court either in the admission of the evidence or in the charge of the Court.

It is assigned as error that the trial Judge erred in permitting an ordinance of the city to be intro- duced in evidence, which was intended to regulate the running of street cars and to inflict a fine for its violation.  So far as the objection goes to the admission of this ordinance as evidence, it cannot avail in this Court, as no objection appears in the

18 P—21

record to have been made to its introduction in the Court below. It is said, however, that it was error in the trial Judge to give it in charge to the jury. This assignment cannot be sustained, as made, inasmuch as it was not charged, and the trial Judge did not in his charge refer to it, or instruct the jury that they could base any finding on its provisions. He did charge the measure of duty of the street car company in terms somewhat the same as that prescribed by the ordinance, but he did not refer to the ordinance as creating, fixing, or enlarging the duty of the company, so that the question resolves itself, at last, into whether the duty and liability of the street car company was properly charged, without reference to the ordinance.

The ordinance is in this language: "Conductors and drivers of each car shall keep a vigilant lookout for all trains, carriages, and persons on foot, and especially children, either on the track or running towards it, and, on the first appearance of danger to such trains or persons or other obstructions, the car shall be stopped in the shortest time and space possible." And then follows a clause providing a penalty of from $1 to $50 for a violation of the ordinance.

The charge of the Court is as follows: "It was the duty of the motorman operating defendant's car No. 110 to keep a vigilant lookout for children in, upon, or using the streets, and, upon the first appearance of danger or probable collision with any

Street Railway Co. v. Dan.

one of them, to stop his car in the shortest time and space possible."

It will be seen that the charge is more directly applicable to the facts of the case than the ordinance, and also added the feature of a probable collision, which is a very important one to the other features in the case, and presented a case of more immediate peril than that set out in the ordinance.

In the same connection, and immediately afterwards, the trial Judge said substantially: "If the motorman saw, or, by vigilant lookout could have seen, the child going into a place of danger in time to have stopped his car and prevented the collision, and he failed to do so, then this would be negligence on the part of the motorman and would make the company liable for the collision and injury; and again, if the time elapsing between the time when the motorman could have first seen the child going into a place of danger and the time when the collision occurred was not enough for him, acting as a careful, prudent motorman, to have done what was necessary to be done in order to stop the car before striking the child, then the railroad company would not be negligent for not stopping the car." And again, "The motorman should exercise ordinary care, in view of the danger to be apprehended, and have his car under such control as to be able to stop it at a reasonable distance at all times." And again, he charged that if the child left a place of safety on the street which was in plain view of the

motorman, if he was maintaining a proper lookout, and went directly or diagonally in the direction of the street car track ahead of a moving car, the necessity for action at once arose on the part of the motorman, and it became his duty to take such steps or adopt such measures as, in the judgment of a man of ordinary care and prudence engaged in that business, it would most likely take to stop the car and prevent a collision. He said further that if the jury found that the failure to reverse was due to excitement caused by the child suddenly hurrying in front of the car and imperiling her life, and this caused him to do the wrong thing and the one that caused her death, the fact of not reversing would not of itself be negligence, nor would doing the wrong thing under the excitement caused by her act make the road liable, and if reversing the car would not have prevented the collision, the failure to reverse cannot be the producing cause of the injury, and the company would not be negligent for not reversing.

This exposition of the law was, as a whole, fair to the street car company, and some features of it are more favorable to it than could be sustained under a close and critical analysis of it. The principal objection to the charge as raised by criticisms upon the charge itself, and brought out by the special requests, are that too high a degree of care was required of the motorman, and that the doctrine of proximate cause was not correctly and point-

edly stated. It is said it is requiring too high a degree of diligence to say that a car must be stopped in the shortest time and space possible, inasmuch as that would require a car with the best appliances in existence, a motorman of iron nerves and the coolest judgment, and that all that should be required is that ordinary care and effort, under the circumstances, should be required. The language must be taken in its connection, and in the connection used it is not, as we think, too strong, nor does it exact too high a degree of diligence. The charge as given is substantially that it is the duty of the motorman to keep a vigilant lookout for children in, upon, or using the street, and upon the first appearance of danger or probable collision with any one of them, to stop his car in the shortest time and space possible. To stop his car in the shortest time and space possible would be but the exercise of ordinary or reasonable diligence under the emergencies mentioned by the trial Judge, and this means simply that the motorman must do all in his power under the emergencies surrounding him to save human life. It must also be read in connection with the other portions of the charge to which he has referred, which states conditions and circumstances which would excuse the motorman and render the company free from liability.

The statute fixes the degree of diligence required of railroad companies, to wit: That in certain contingencies, in order to prevent accidents, every pos-

sible means shall be employed to stop the train and prevent an accident.　Shannon, § 1574, Subsec. 4.

The doctrine of proximate cause, we think, was clearly stated by the learned trial Judge, though not in the exact language of counsel, which it was not error to decline, so long as the proper rule was intelligently stated to the jury.　We think the charge is not susceptible of the construction counsel puts upon it, that it charges the doctrine of comparative negligence, but the use of the term "rather than," taken from the language of this Court upon a former hearing of this case, lays down the rule, not of comparative negligence, but of proximate and remote cause.

It is objected that the trial Judge improperly said to the jury, that it was natural for them to have their sympathies aroused in behalf of the suffering.　This was followed immediately by the further statement, as follows: "This is entirely proper, still, as jurors, you must never lose sight of your duty and obligations under your oaths, which is to try the case and a true verdict render, according to the law and evidence."　And the argument is that he should have said they must not allow their sympathies to enter into the consideration of the case.　He was not asked to so charge, and no further charge was asked on this feature of the case.　In another part of his charge, the trial Judge cautioned the jury not to allow their sympathy to prejudice or affect their verdict.　There is

Street Railway Co. *v.* Dan.

no reversible error in this. We do not mean, however, to approve the use of the expression by the trial Judge, that their sympathy was entirely proper. *Young* v. *Cowden,* 14 Pickle, 582.

Other assignments are made which, in view of what we have already said, need not be specially commented on. They refer to special requests to make specific charges. We have examined them, and think all that should have been given were properly embodied in the main charge; that it was no error to decline to give them, in the language of counsel, the second time. We see no reversible error in the case, and the judgment is affirmed with costs.