Homer WRIGHT, Plaintiff/Appellant,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Feb. 28, 1990.

Permission to Appeal Denied by Supreme Court May 14, 1990.

R. Bruce Ray, Jamestown, for plaintiff/appellant.

David E. Smith, Knoxville, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal involves a house near Byrdstown that was destroyed by arson. The insurer paid its policy limits on the house to the property owner's mortgagee and other creditors but refused to honor the claim for the contents of the house because it believed that the property owner had procured the arson. When the property owner sued the insurer in the Chancery Court for Fentress County for the value of the contents, the insurer counterclaimed for the money it had been required to pay for the loss of the house. A jury found for the insurer and awarded the company $108,200. The property owner has appealed, asserting that the jury's verdict was tainted by the introduction of incompetent evidence. We affirm the judgment.

### I.

Homer K. Wright is a home builder and entrepreneur in and around Pickett and Fentress Counties. In October, 1980, he bought a house at the Dale Hollow Sky Resort in Pickett County near Byrdstown. He insured the house and its contents through the United Services Automobile Association ("USAA") and lived there with his wife.

The house was totally destroyed by fire during the early morning hours of May 23, 1982, while Mr. Wright and his wife were visiting Mr. Wright's daughter and son-in-law in Nashville. The USAA adjustors, state fire investigators, and the local law enforcement authorities quickly concluded that the fire had been purposely set. Mr. Wright even told them that he thought arson had been involved.

Mr. and Mrs. Wright filed an inventory with USAA stating that they had lost $81,000 worth of personal property in the fire. According to the claim, the Wrights had purchased most of the property within the four years immediately preceding the fire, $23,000 of it within the preceding eighteen months. USAA declined to pay the claim because of the suspicious circumstances surrounding the fire and because its adjustor believed that the Wright's were overstating the value of the property supposedly lost in the fire.

The insurance policy obligated USAA to pay Mr. Wright's mortgagee and other named insureds, notwithstanding the suspicious nature of the fire. In October, 1982, USAA filed an interpleader action in the Chancery Court for Fentress County

against Mr. Wright, his mortgagee, and other named insureds and creditors, requesting the trial court to determine to whom the insurance proceeds should be distributed. It also deposited $108,200, the limits of its coverage on the house, into court.

Mr. Wright sued USAA in January, 1983 for $54,100 when the company refused to pay his claim for the loss of the contents of the house. He also requested $6,000 for loss of use of the property and the imposition of a statutory, bad faith penalty for denying his claim. USAA responded by asserting that it had denied the claim because Mr. Wright had filed a fraudulent proof of loss and had procured the arson.

In March, 1983, the Fentress County Sheriff told USAA's adjustor that he had received confidential information relating to the fire at Mr. Wright's house. In May, 1983 the adjustor and other state and local authorities interviewed Steve Delk, Mr. Wright's nephew, who told them that he had set fire to the house at Mr. Wright's request in return for $1,000.[1]

Mr. Delk agreed to engage Mr. Wright in conversations about the fire while wearing a concealed microphone and tape recorder. During a September 10, 1983 conversation, Mr. Wright told Mr. Delk, "I'll pay you when I get my money," after Mr. Delk asked to be paid for setting the fire. Armed with this information, USAA filed a counterclaim in Mr. Wright's action seeking to recover from Mr. Wright the $108,-200 it had been required to pay.

## II.

■ We turn first to Mr. Wright's assertion that the trial court should not have permitted USAA to introduce evidence concerning his previous insurance claims arising from fire damage to other property. While the relevancy of this proof is subject to considerable doubt, we have determined that Mr. Wright cannot raise this issue on appeal because he failed to make a timely effective objection to the evidence.

### A.

Mr. Wright filed a motion in limine prior to the trial to prevent USAA from introducing "evidence that other fires have occurred on property owned or being worked on by the plaintiff." When the trial court took up the motion at the beginning of the trial, USAA's counsel explained that he intended to use this proof to show Mr. Wright's familiarity with filing insurance claims and his knowledge that filing insurance claims after a fire was "a means of converting distressed property into cash."

The trial court declined to rule definitively on the motion, stating:

Well, of course, the Court cannot sustain the motion if the proper groundwork is laid for it, and I think the only way I could really rule on the evidence is after the evidence is admitted or at the time it's admitted. If they are able to prove a common scheme or plan or other probative reasons to introduce this evidence, the Court could not sustain the motion. If it's not proven, then I can sustain it and instruct the Jury on it. So I really cannot sustain the motion in limine at this time. All right, the next motion?

Mr. Wright's attorney then inquired about a jury-out hearing before the evidence was introduced. The trial court responded:

Well, the Court has two alternatives. One would be to—or three alternatives. One would be to have the Jury out of hearing, which would be rather lengthy, probably in terms of half a day. Secondly, the Court can instruct the Jury, or, thirdly, the Court can declare a mistrial, if the evidence is introduced, and improperly so. I really think I'll let the Jury hear the evidence, with the understanding, of course, to the defendants that I might instruct the Jury and I might declare a mistrial, if the evidence is not admissible. It's according to how serious it is at the time. I don't think I'll have the Jury out of hearing on it. I'll let the witnesses testify.

1. Mr. Delk was later convicted of arson in the Criminal Court for Pickett County.

Mr. Wright testified during direct examination that he had filed "two small claims" with USAA before. During its cross-examination of Mr. Wright and Mr. Wright's wife, brother, and son-in-law, USAA elicited testimony concerning earlier fires on other property Mr. Wright owned, as well as on property owned by his son-in-law and at a house Mr. Wright was building for his brother. Mr. Wright did not object to any of this testimony. Nor did he request a mistrial or even limiting instructions.

### B.

■ A jury's verdict should be based on relevant, competent evidence. Accordingly, our courts expect litigants to make specific objections prior to the introduction of inadmissible evidence because doing so enables the litigants and the trial court to insulate the jury's deliberations from the taint of inadmissible evidence. *See Middle Tenn. R.R. v. McMillan*, 134 Tenn. 490, 508, 184 S.W. 20, 24 (1916). Failing to make a timely, specific objection in the trial court prevents a litigant from challenging the introduction of inadmissible evidence for the first time on appeal. *Ehrlich v. Weber*, 114 Tenn. 711, 717–18, 88 S.W. 188, 189 (1905); *Street Ry. v. Dan*, 102 Tenn. 320, 321–22, 52 S.W. 177, 178 (1899); *Pyle v. Morrison*, 716 S.W.2d 930, 936 (Tenn.Ct. App.1986); *Baxter v. Vandenheovel*, 686 S.W.2d 908, 911 (Tenn.Ct.App.1984).

■ We currently recognize two ways for a litigant to make a timely evidentiary objection in a civil case. The first is a pre-trial motion in limine; the second, an objection to the evidence at the time it is offered. A litigant who files an unsuccessful motion in limine need not also make another objection when the evidence is introduced in order to preserve an evidentiary issue for appellate review as long as the trial court has "clearly and definitively" disposed of the motion in limine. *State v. McGhee*, 746 S.W.2d 460, 462 (Tenn.1988).

Mr. Wright filed a motion in limine seeking to exclude USAA's anticipated use of evidence concerning other fires on his property and that of his relatives. He did not object to the evidence when it was introduced after the trial court denied his motion. Thus, his ability to raise this issue on appeal depends upon the definitiveness of the trial court's disposition of his motion in limine.

■ The trial court did not rule definitively on Mr. Wright's motion in limine. While it clearly declined to grant a jury-out hearing,[2] it left open the possibility of giving cautionary instructions or of even declaring a mistrial. Mr. Wright should not have expected the trial court to do either on its own accord without a contemporaneous objection when the offending evidence was introduced. Thus, he cannot rest his appeal on the motion in limine alone.

### III.

■ Mr. Wright also asserts that we should set aside the judgment because the trial court permitted USAA to use an expert witness whose identity had not been revealed in a timely manner. We find that Mr. Wright cannot raise this issue on ap-

---

**2.** As a general rule, it is unwise to admit evidence on the condition that it will be excluded if ultimately found to be incompetent. *Russell v. Farrell*, 102 Tenn. 248, 252, 52 S.W. 146, 147 (1899). In 1976, the Tennessee Supreme Court, in adopting Fed.R.Evid. 608(b) as a part of the practice in this State, held that a litigant expecting cross-examination on collateral bad acts was entitled to a jury-out hearing on the competency of the evidence. *State v. Morgan*, 541 S.W.2d 385, 390 (Tenn.1976). This rule has since been incorporated into Tenn.R.Evid. 608(b). That *Morgan* was a criminal case is of little consequence since the rules of evidence are generally the same in civil and criminal cases. *Nichols v.*

*Mutual Life Ins. Co.*, 178 Tenn. 209, 215, 156 S.W.2d 436, 439 (1941).

In light of *Morgan*, the trial court erred by denying Mr. Wright's request for a jury-out hearing on the admissibility of the evidence concerning the other fires on his property and that of his family. However, Mr. Wright did not raise this issue in his motion for new trial or in his brief on this appeal. The trial court's action does not require reversal in this case because Mr. Wright's failure to make a timely objection to USAA's use of the evidence waived not only his opportunity to challenge the competency of the evidence itself but also the pre-trial denial of the jury-out hearing.

peal because he failed to renew his objection after being given an opportunity to interview the witness before the witness took the stand.

### A.

Pretrial discovery during the five years this case was awaiting trial did not go smoothly. Mr. Wright resisted several of USAA's discovery requests, forcing USAA to obtain orders requiring him to comply. During this time, Mr. Wright apparently requested USAA to disclose the names and expected testimony of the expert witnesses it expected to use at trial.[3] He received no response until three days prior to the trial when USAA informed him that it intended to call Larry Eldridge, a certified public accountant, to give expert testimony concerning Mr. Wright's precarious financial condition.

Mr. Wright sought to prevent USAA from using Mr. Eldridge because his lawyer had not been given sufficient time to prepare to cross-examine Mr. Eldridge. USAA responded that it's decision to call Mr. Eldridge had been delayed by Mr. Wright's delay in producing information concerning his accounts at a building supply company and that it had notified Mr. Wright of its intention to use Mr. Eldridge within days after it finally received the information. The trial court overruled Mr. Wright's motion but permitted Mr. Wright's lawyer to interview Mr. Eldridge before he took the stand. After interviewing Mr. Eldridge, Mr. Wright's lawyer did not request a continuance or complain further concerning the timeliness of USAA's notice concerning Mr. Eldridge.

### B.

Pre-trial discovery is intended to bring out the facts prior to trial, thereby eliminating surprise and enabling the parties to decide what is at issue. *Ingram v. Phillips,* 684 S.W.2d 954, 958 (Tenn.Ct.App. 1984); *Strickland v. Strickland,* 618

S.W.2d 496, 501 (Tenn.Ct.App.1981). The discovery rules embody a broad policy favoring discovery of any relevant, non-privileged information and leave control over the discovery process in the trial court's hands. *Vythoulkas v. Vanderbilt Univ. Hosp.,* 693 S.W.2d 350, 357–58 (Tenn.Ct. App.1985); *Price v. Mercury Supply Co.,* 682 S.W.2d 924, 935 (Tenn.Ct.App.1984). Tenn.R.Civ.P. 37 specifically vests in the trial court the authority to control discovery and to punish abuses when they occur. *Lyle v. Exxon Corp.,* 746 S.W.2d 694, 698–99 (Tenn.1988); *Brooks v. United Uniform Co.,* 682 S.W.2d 913, 915 (Tenn. 1984); *Strickland v. Strickland,* 618 S.W.2d at 500–01.

The record does not support finding that USAA deliberately concealed Mr. Eldridge's identity from Mr. Wright. Its delay was, in large measure, due to Mr. Wright's own delay in providing part of the financial information Mr. Eldridge needed for his opinion concerning Mr. Wright's financial condition. In light of the short interval between USAA's disclosure and the trial, the trial court could have considered granting Mr. Wright a continuance. *See Lyle v. Exxon Corp.,* 746 S.W.2d at 699. However, neither a continuance nor the exclusion of Mr. Eldridge's testimony was required after Mr. Wright's attorney interviewed Mr. Eldridge and did not object further to the use of his testimony at trial.

### IV.

We affirm the judgment and remand the case to the trial court for any further proceedings that may be required. We also tax the costs of the appeal to Mr. Homer K. Wright and his surety for which execution, if necessary may issue.

LEWIS and CANTRELL, JJ., concur.

---

3. These interrogatories are not in the appellate record. Tenn.R.App.P. 24(a) provides that "papers relating to discovery" will not be part of the record on appeal without a specific designation by one of the parties that they be included. The record does not show that Mr. Wright re-

quested that the interrogatories be included in the appellate record. However, since USAA does not deny the existence of the interrogatories, we will assume that they were filed in the manner represented by Mr. Wright.