# FILED

**December 17, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

DEBORAH PRICE-LUTTRELL,      )
      )
   Plaintiff/Appellant,      )
      )     Appeal No.
v.      )    M1999-01834-COA-R3-CV
      )
GEORGE PARKER LUTTRELL, SR.,   )    Coffee Circuit
      )   No. 2332-D
   Defendant/Appellee.     )

## COURT OF APPEALS OF TENNESSEE

## APPEAL FROM THE CIRCUIT COURT FOR COFFEE COUNTY

## AT MANCHESTER, TENNESSEE

## THE HONORABLE JOHN W. ROLLINS, JUDGE

ROBERT J. JACKSON
STANLEY A. KWELLER
Jackson, Kweller, McKinney & Badger
One Washington Square, Suite 103
214 Second Avenue North
Nashville, Tennessee 37201
    ATTORNEYS FOR PLAINTIFF/APPELLANT

ROBERT T. CARTER
Henry, McCord, Bean & Miller

300 North Jackson Street
P. O. Box 538
Tullahoma, Tennessee 37388
        ATTORNEY FOR DEFENDANT/APPELLEE


AFFIRMED AND REMANDED


WILLIAM B. CAIN, JUDGE

# O P I N I O N

The sole issue on appeal in this case is custody of a minor child, aged seven years at the time of the trial. The trial court, after hearing the evidence, granted custody of Nathian Luttrell to his father, George Luttell. The child's mother, Deborah Price-Luttrell now appeals asserting that upon a proper compar-ative fitness analysis, she should be the custodial parent. We disagree with Ms. Luttrell and affirm the decision of the trial court.

At the hearing held in the trial court, seven witnesses testified including both parties. Following the hearing, the trial court observed as follows:

> Ladies and gentlemen, you can't have it both ways, and I just don't believe that, frankly, that Mr. Luttrell turned from a pillar of the community in a year and a half into the monster that Ms. Luttrell says that he is. This is sworn to under oath in a court of law. Ronnie Jacobs has knowledge of the minor children's stepfather, his good character, and does not abuse alcohol; Vernon Teters has knowledge of the minor children's stepfather, his good character, and does not abuse alcohol; Norman Bryant has knowledge of the minor children's stepfather, his good character, and does not abuse alcohol; H. B. Rogers has knowledge of the minor children's stepfather, his good character, and does not abuse alcohol; Roy Lotance has knowledge of the minor children's stepfat[h]er, his good character, and does not abuse alcohol.
>
> Ms. Luttrell, your credibility is in serious issue with this

Court.

. . . .

Now comes the hard part. Mr. Luttrell, you're going to be faced with a heavy burden because I'm going to give you custody of your son, but it's going to be on the condition that you go immediately to Motlow or some other facility and enroll yourself in a course where you can learn how to read and write, unless a doctor can tell me, or a trained professional, that you can't. I think based on this record and the proof that I have heard, that you are the better choice, considering Ms. Luttrell's track record with other children. But you've got a heavy burden and –  but I expect you to live up to it.

In overruling the motion to alter or amend filed by Ms. Luttrell asking the court to reconsider the custody decision, the court observed: "Where one of the parties very clearly – you know, there are a multitude of sins out there that affect[] parenting, and I think being honest plays a role as a role model. I think it's imperative that people raise their children in an environment where there's some value ascribed to truth and being honest and forthright, and that was a factor in my decision in this case."

In her first issue, Ms. Luttrell asserts that the trial court was incorrect in determining that she was comparatively less fit to be the custodian of the minor child. It is well settled that the paramount concern in a custody decision is the best interest of the child. *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983). In making this decision, the court is legislatively mandated to consider certain factors:

(1) The love, affection and emotional ties existing between the parents and child;
(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary care giver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . . .
(4) The stability of the family unit of the parents;
(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;
. . . .
(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106 (Supp. 1999).

In seeking the best interest of the child and considering the statutory factors, the needs of the child are paramount and the desires of the parents secondary. *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986). A "comparative fitness" analysis is required in which neither parent is to be measured by a standard of perfection. *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973); *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). As this court has held:

> Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts must be able to exercise broad discretion in these matters, but they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law. Thus, we review these decisions de novo on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise.

*Gaskill*, 936 S.W.2d at 631 (citations omitted).

Although seven witnesses testified in the hearing below, the case made by the record turns almost entirely on the credibility of the parties. Ms. Luttrell had been twice before married and had two sons by her first marriage. Mr. Luttrell had been once before married and had one child by this previous marriage. Ms. Luttrell

testified first with a litany of criticisms of Mr. Luttrell in which she asserted that he falsely accused her of having affairs with other men. She accused him of excessive drinking of alcoholic beverages, verbal and physical abuse of her, and inattention to the minor child. She testified that there were problems from the time they moved to their farm in 1994 until the time of their separation:

> Shortly after we moved out to the farm is when the problems started. We lived quite a ways out in the country. He asked – I wanted to visit a friend, he became upset if I wanted to go visit a girlfriend or spend a couple hours with them. If I wanted to go back to school at one point to try to finish up my education, he became very upset with that. He had very strong jealousy. If I went to the store and he was with me, if somebody even looked in my direction he became very upset, made comments to those people. Afterwards I received a very verbal chewing out. A lot of times I didn't even know who these people were. If I said hi to them, I was chastised for it afterwards.
>
> There was a lot of – there was drinking that went on. And the drinking at first didn't seem to be a problem. After we moved out to the farm, drinking increased, which when he came in in the evenings, like I said, he'd been drinking some and he'd go to sleep, so he wasn't there as far as emotional support as far as the family unit was concerned. He wouldn't take vacations with us. When we'd go on holiday to somewhere – he went one time and that was it. After that he said he wouldn't go anymore, so we took holidays by ourselves.
> . . . .
> Q    Let's go back just a minute. When you were talking about the incidents when you were out in public or something, that he would chastise you; what would he say?
> A    He'd ask me who was that person. Sometimes I knew him. A lot of times I didn't. Yeah, you know who he is. Why would they speak to you, why would they look at you. And it got to [a point] where if we ran into somebody out there, he would start marking comments, what are you looking at, you know. Then we'd get into the vehicle, he'd say, are you seeing that person. He'd drive by their house, are you sleeping with that person, is that somebody else that you're sleeping with.
> Q    Did he often accuse you of having sexual relations

with other persons?

A    Yes, ma'am.  After we moved to the farm is when that started.

Q    . . . [A]nd you moved to the farm February of '94; is that right?

A    I believe that is correct.

Q    Approximately how many people would you say he'd accused you of throughout the years of having sexual relations?

A    Several.

Q    Several, meaning two, ten, [twenty]?

A    Ten to [fifteen].

On cross-examination, Ms. Luttrell was immediately confronted with a serious problem.  Her first husband, Michael Brian Price, had previously filed a change of custody petition as to Ms. Luttrell's children by her first marriage.  In preparation for trial of that petition in December 1996, she had filed sworn pleadings and answers to interrogatories asserting certain matters as to Mr. Luttrell.  She testified as follows:

Q    Now, getting ready for the case a year and a half ago, you swore in some pleadings that this man was a good father, good stepfather, and did not use alcohol; is that right?

A    I said he was not abusive of alcohol, but he did drink.

Q    Do you remember answering Interrogatory Number 22?

A    Can you refresh my memory, please.

Q    Yes, ma'am.  I can show you the document.  Do you recognize that document, ma'am?

A    I don't recognize it, but my signature, I'm sure I saw it.

Q    Are there a list of names on there?

A    There is.

Q    What is the first name?

A    Ronnie Jacobs.

Q    According to that document, what is Ronnie Jacobs going to testify to?

A    In this here?

Q    Yes, ma'am.

A        That George was a good stepfather.

Q        Good stepfather.

A        And does not abuse alcohol.

Q        Does not abuse alcohol.  What about the second witness on there?

A        Mr. Teters.

Q        Mr. Vernon Teters?

A        Correct.

Q        And what does it say that Mr. Teters was going to testify to a year and a half ago?

A        The stepfather was a good caretaker, does not abuse alcohol.

Q        What about the third person on the list?

A        Mr. Bryant, Norman Bryant.

Q        What was Mr. Bryant going to testify to a year ago?

A        To the same thing, good caretaker, does not abuse alcohol.

MR. CARTER: Your Honor, may I refer to the document?

THE COURT: Yes.

BY MR. CARTER:

Q        Would it be fair to say from your testimony that a year and a half ago your ex-husband was a good character, a good stepfather, and did not abuse alcohol?

A        Yes.

Q        That's what your witnesses were going to testify to Judge Ewell in that other hearing?

A        Yes, I believe so.

Q        But today he's a bad character?

A        There's been some changes come about in the past year and a half.

Q        Since December of 1996?

A        Yes, sir.

It is not difficult to see why the trial judge had serious reservations about the credibility of Ms. Luttrell.

Ms. Luttrell further testified that since Mr. Luttrell could not read or write, he would not be capable of assisting six year old Nathian, who suffered from attention deficit disorder and was hyperactive.  This was contrasted by evidence that Mr. Luttrell, although illiterate, had put his older son, George, Jr., through college, and that this son was married with three children and held a stable job.  The proof likewise showed that Ms. Luttrell's two oldest sons by her prior marriage, Aaron and

Isaac Price, had been the subjects of juvenile court proceedings instituted by Ms. Luttrell and that the older son was a "D" student and compelled to attend alternative school as a discipline problem. She further testified about problems with the younger son Isaac:

> A       Basically started this past school year when we discovered that Isaac was laying out from school, he wasn't going to school. I addressed these issues because he was falsifying notes to turn in in school. He was told if he did not stay in school on a regular basis there would be a truancy involved with it. We discovered that he was smoking pot, he was popping pills, he was using alcohol when he was out with his friends and stuff.
> Q       As a mother, that caused you concern.
> A       Yes.
> Q       You've been trying to discipline him.
> A       Correct. I have been trying to get him in counseling this past year, and he refuses to go.

No parent can be a guarantor of the development of children no matter how dedicated the parent may be in care giving, but factor (10) of Tennessee Code Annotated section 36-6-106 requires the court to consider "each parent's past and potential for future performance of parenting responsibilities." In this respect, even inhibited by illiteracy, Mr. Luttrell's past performance in parenting shines in comparison to that of Ms. Luttrell.

It is no longer necessary for the proof to establish that a parent is unfit in order for custody to be awarded to the other parent. *Harris v. Harris*, 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992). The trial court in this case has made no finding that Ms. Luttrell is an unfit parent and indeed such a finding is neither mandated by the evidence nor necessary to the custody determination. The trial court has determined that Mr. Luttrell in a comparative fitness analysis is the better choice for custody in this case. With the trial court having seen and heard the witnesses, observed their manner and demeanor in testifying and adjudged their credibility, this court is reluctant to second guess the trial court.

In a custody decision, the law does not require trial judges to iterate one by one their determinations of the relevant statutory factors provided in Tennessee Code Annotated section 36-6-106, but rather it requires that they shall consider such factors in determining what is in the best interest of the minor child. The trial court findings of fact come to this court presumed to be correct unless the evidence preponderates otherwise. *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992). The evidence in this case considered as a whole does not preponderate against the findings of the trial judge.

Ms. Luttrell further asserts that the trial court erred in referring to evidence from individuals who did not testify as witnesses in this trial. This issue arises from a reading into evidence of the answers of Ms. Luttrell to Interrogatory Number 22 in the *Price v. Price-Luttrell* case. Therein she listed witnesses whom she contended would testify that Mr. Luttrell was of good character, a good stepfather and did not abuse alcohol. No contemporaneous objection was made to this document at the time that it was admitted in evidence and objections thereto can not be raised for the first time on appeal. *See Wright v. United Servs. Auto Ass'n*, 789 S.W.2d 911, 915 (Tenn. Ct. App. 1990).

In the *Price* proceeding, Ms. Luttrell had been asked to name witnesses who would testify in that proceeding as to the facts that she was asserting in that same proceeding. She was asserting at that time that Mr. Luttrell was a good stepfather, a good caretaker and did not abuse alcohol. Ms. Luttrell, in answer to the interrogatory, disclosed this very testimony. Following the use of this exhibit in cross-examining her, she testified:

> Q      Would it be fair to say from your testimony that a year and a half ago your ex-husband was a good character, a good stepfather, and did not abuse alcohol?
> A      Yes.
> Q      That's what your witnesses were going to testify to Judge Ewell in that other hearing?
> A      Yes, I believe so.

There was no error in the trial court consideration of this document. *Pankow v. Mitchell*, 737 S.W.2d 293 (Tenn. Ct. App. 1987).

The judgment of trial court is in all respects affirmed and this case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant, Ms. Luttrell.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
PATRICIA J. COTTRELL, JUDGE

> çëç   As a mother, that caused you concern.
> A      Yes.
> Q      You've been trying to discipline him.
> A      Correct.  I have been trying to get him in counseling
> this past year, and he refuses to go.

No parent can be a guarantor of the development of children no matter how dedicated the parent may be in care giving, but factor (10) of Tennessee Code Annotated section 36-6-106 requires the court to consider "each parent's past and potential for future performance of parenting responsibilities." In this respect, even inhibited by illiteracy, Mr. Luttrell's past performance in parenting shines in comparison to that of Ms. Luttrell.

It is no longer necessary for the proof to establish that a parent is unfit

in order for custody to be awarded to the other parent. *Harris v. Harris*, 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992). The trial court in this case has made no finding that Ms. Luttrell is an unfit parent and indeed such a finding is neither mandated by the evidence nor necessary to the custody determination. The trial court has determined that Mr. Luttrell in a comparative fitness analysis is the better choice for custody in this case. With the trial court having seen and heard the witnesses, observed their manner and demeanor in testifying and adjudged their credibility, this court is reluctant to second guess the trial court.

In a custody decision, the law does not require trial judges to iterate one by one their determinations of the relevant statutory factors provided in Tennessee Code Annotated section 36-6-106, but rather it requires that they shall consider such factors in determining what is in the best interest of the minor child. The trial court findings of fact come to this court presumed to be correct unless the evidence preponderates otherwise. *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992). The evidence in this case considered as a whole does not preponderate against the findings of the trial judge.

Ms. Luttrell further asserts that the trial court erred in referring to evidence from individuals who did not testify as witnesses in this trial. This issue arises from a reading into evidence of the answers of Ms. Luttrell to Interrogatory Number 22 in the *Price v. Price-Luttrell* case. Therein she listed witnesses whom she contended would testify that Mr. Luttrell was of good character, a good stepfather and did not abuse alcohol. No contemporaneous objection was made to this document at the time that it was admitted in evidence and objections thereto can not be raised for the first time on appeal. *See Wright v. United Servs. Auto Ass'n*, 789 S.W.2d 911, 915 (Tenn. Ct. App. 1990).

In the *Price* proceeding, Ms. Luttrell had been asked to name witnesses who would testify in that proceeding as to the facts that she was asserting in that same proceeding. She was asserting at that time that Mr. Luttrell was a good

stepfather, a good caretaker and did not abuse alcohol. Ms. Luttrell, in answer to the interrogatory, disclosed this very testimony. Following the use of this exhibit in cross-examining her, she testified:

> Q    Would it be fair to say from your testimony that a year and a half ago your ex-husband was a good character, a good stepfather, and did not abuse alcohol?
> A    Yes.
> Q    That's what your witnesses were going to testify to Judge Ewell in that other hearing?
> A    Yes, I believe so.

There was no error in the trial court consideration of this document. *Pankow v. Mitchell*, 737 S.W.2d 293 (Tenn. Ct. App. 1987).

The judgment of trial court is in all respects affirmed and this case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant, Ms. Luttrell.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
PATRICIA J. COTTRELL, JUDGE