Kathryne B. INGRAM,
Plaintiff-Appellee,

v.

Marie Crain PHILLIPS,
Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section.

Nov. 9, 1984.

Permission to Appeal Denied by Supreme
Court Jan. 28, 1985.

Fred E. Cowden, Jr., Nashville, for plaintiff-appellee.

Claude Callicott, David Rizor, Nashville, for defendant-appellant.

## OPINION

LEWIS, Judge.

Plaintiff-appellee filed her complaint in which she alleged that defendant-appellant had converted to her own use antique automobiles and a Chris-Craft Cabin Cruiser which were owned by plaintiff's husband, Dr. Minyard Dee Ingram, Jr., at the time of his death.

Defendant answered that she was, in fact, the owner of the automobiles and the Chris-Craft by gift from Dr. Ingram during his lifetime.

Subsequent to an evidentiary hearing, the Chancellor found that the deceased had not made gifts of either the automobiles or the Chris-Craft to defendant and that, therefore, the deceased was the owner of the property at the time of his death.

The pertinent facts are as follows:

Plaintiff is the surviving spouse and executrix of the estate of her husband, Dr. Ingram, who died August 2, 1981. Defendant, at the time of Dr. Ingram's death and for several years prior to his death, was Dr. Ingram's bookkeeper and, as found by the Chancellor, Dr. Ingram's agent. In addition to being a physician, Dr. Ingram also had other interests, including dealing in antique automobiles. He took title to the automobiles both in his own name and in the name "Old Dominion Company," a corporation which was wholly owned by the deceased but which had been dissolved some years before.

The property involved in this suit is two Rolls Royce automobiles and a Seagraves Fire Truck, titled in the name "Old Dominion," and a Rolls Royce and Chris-Craft Cabin Cruiser, titled in the name of Dr. Minyard Dee Ingram.

By his will, Dr. Ingram provided, *inter alia*, that plaintiff was to receive all his clothing, jewelry, personal effects, automobiles, together with any policies of insurance on the automobiles and all other tangible personal property that he owned at the time of his death.

At the close of each calendar year, the defendant prepared for Dr. Ingram financial statements reflecting assets and liabilities. The last financial statement prepared by defendant for Dr. Ingram was for the calendar year 1980. The 1980 statement shows Dr. Ingram to be the owner of antique automobiles having a value of $120,-000.

Dr. Ingram insured the antique automobiles and the Chris-Craft Cruiser in his name individually. The insurance premiums on the property were paid by Dr. Ingram.

Dr. Ingram stored his antique vehicles at different locations over the years. He sometimes stored them at apartment houses that he owned and also stored vehicles at the defendant's home. The vehicles which defendant claims were given to her by Dr. Ingram were stored at her home at the time of Dr. Ingram's death and had been for sometime prior to his death.

Defendant claims ownership to a 1937 Rolls Royce which she says Dr. Ingram gave her as a Christmas gift in 1976. This vehicle was titled in the name "Old Dominion."

She claims ownership of a 1937 Rolls titled in the name of M.D. Ingram which she says was a birthday gift from Dr. Ingram on April 20, 1975.

She claims ownership of a 1971 Rolls also titled in the name "Old Dominion" which she says Dr. Ingram gave her in 1976.

She claims Dr. Ingram gave her the 1929 Seagraves Fire Engine in December, 1975.

She claims ownership of the Chris-Craft which was purchased by Dr. Ingram in June, 1981. She insists that the Chris-Craft is hers because a 1967½ Rolls Royce was given to her by Dr. Ingram and that this Rolls was used in gaining ownership of the Chris-Craft. Dr. Ingram sold the 1967½ Rolls Royce to a dealer in May, 1981. This was a three-way transaction in which Dr. Ingram sold the Rolls to a Chicago dealer and paid approximately $20,000 and proceeds from the sale of the Rolls to the owner of the Chris-Craft. Defendant insists that the $20,000 was her money. However, the record shows that Dr. Ingram's check was used to pay the addition-

al $20,000. Defendant insists that the 1967½ Rolls was given to her on August 21, 1980.

Defendant has four bills-of-sale to the antique automobiles. Three of the four bills-of-sale under which she claims ownership do not bear the signature of Dr. Ingram. They are signed "Old Dominion Company" by defendant M.C. Phillips, as agent, and propose to transfer the ownership of the vehicles to defendant. The fourth bill-of-sale does purport to bear the signature of Dr. Ingram.

Defendant made no effort to transfer title to any of these vehicles during the lifetime of Dr. Ingram. Six days after Dr. Ingram's death, she transferred title to the vehicles to herself through the office of the County Court Clerk in DeKalb County, Tennessee. She immediately sold the vehicles to an antique automobile dealer in Arkansas.

In addition to the bills-of-sale, defendant relies on the testimony of friends, her parents, the Arkansas automobile dealer, and defendant's son in an attempt to show that Dr. Ingram made gifts to her. These witnesses state that Dr. Ingram had on occasions prior to his death told them that the automobiles belonged to the defendant and that he had given the automobiles to her.

The bill-of-sale which purports to bear the signature of Dr. Ingram was for one of the 1937 Rolls Royces. Involved in this transaction were two bills-of-sale which purported to transfer the 1937 Rolls. The notary testified that he had no independent recollection of notarizing either of the bills-of-sale or witnessing Dr. Ingram's execution of the bill-of-sale. He testified that on other occasions he had notarized documents without having actually witnessed their signing, and in the past he had also notarized bills-of-sale which were totally blank containing only the purported signature of the owner.

One of the two bills-of-sale which purport to have been signed by Dr. Ingram states that it was executed on the _____ day of April, 1975. No consideration is shown, and the "April, 1975" was inserted in long-hand. The second bill-of-sale is for the

same vehicle and, on its face, appears to be almost identical to the first bill-of-sale. However, the second bill-of-sale shows a $9,000 consideration and the date of the transfer is typed in as April 21, 1975. The notary could give no explanation regarding the differences in the bills-of-sale, nor could he identify which bill-of-sale he notarized.

Defendant stated that she had possession of the vehicles both prior to the date the gifts were allegedly made and thereafter until the death of Dr. Ingram. She testified that on other occasions she had stored numerous vehicles belonging to Dr. Ingram at her home and that she had never made any charge for the storage. She also admitted that she had been his bookkeeper and that she had access to his books and records, both prior to and following his death.

■ Defendant has presented for our consideration seventeen issues. The first three complain that the Chancellor erred in admitting "hearsay" testimony. We deem it unnecessary to address these "hearsay" issues. This case is before us from a bench trial. Our review is *de novo* upon the record. Tenn.R.App.P. 13(d). We have reviewed the record and determined that there is ample evidence to support the Chancellor's judgment without the consideration of the so-called "hearsay" testimony. We, therefore, hold that if the admission of this testimony was error, it was harmless and did not affect the judgment. Tenn.R.App.P. 36(b).

■ Defendant's fourth issue complains that the Chancellor erred "in admitting into evidence the opinion of the alleged hand-writing expert," Pat Fuller. The Chancellor, in his Findings of Fact, stated: "This Court has determined that the expert testimony of Pat Fuller in this instance lacks sufficient weight to be accorded any probative value because of the facts upon which she based her opinion." The Chancellor did not rely on Mrs. Fuller's testimony in reaching his decision. Defendant has no grounds for complaint.

By issues five through eleven, defendant contends that the Chancellor erred in failing to find that she had shown by clear and convincing evidence that Dr. Ingram had made gifts to her of the automobiles and the Chris-Craft cruiser during his lifetime.

■ Here, the property alleged to belong to Dr. Ingram was in the possession of the defendant. Plaintiff had the burden of proof to show that the property belonged to Dr. Ingram. When plaintiff carried that burden, as she did, the burden then shifts to defendant who must show not by a preponderance of the evidence but by clear and convincing evidence that the property was given to defendant during Dr. Ingram's lifetime.

"[I]n order to sustain a gift *inter vivos* or a gift *causa Mortis*, the evidence must be clear and convincing." 38 Am.Jur.2d *Gifts* § 103, p. 903 (emphasis added); *Atchley v. Rimmer*, 148 Tenn. 303, 255 S.W. 366 (1923).

■ The Chancellor found "at all times prior to his death, evidence of ownership was held out by Dr. Ingram as his own." The competent proof supports that finding: (a) Dr. Ingram executed, under oath, his personal financial statement reflecting that he was the owner of antique automobiles having a value of $120,000. These financial statements were prepared by the defendant. Dr. Ingram owned no antique vehicles other than those involved in this suit. (b) Dr. Ingram insured the property in his name and personally paid the insurance premiums. (c) He sold the 1967½ Rolls Royce in May, 1981, less than three months prior to his death. This is the same vehicle defendant contends was given to her by Dr. Ingram in April, 1980. Yet, she allowed Dr. Ingram to make the sale. (d) All of the vehicles were registered either in the name "Old Dominion," a name used by Dr. Ingram to register property belonging to him, or in his name individually. (e) He depreciated at least one of the vehicles on his tax return after the date of the alleged gift. The tax return was prepared by defendant. (f) The additional $20,000 paid for the Chris-Craft was paid from funds belonging to Dr. Ingram.

Defendant also treated the property as being Dr. Ingram's after the date of the alleged gifts. She prepared the financial statements showing that Dr. Ingram owned $120,000 worth of antique automobiles, even though she contends that Dr. Ingram had given all of the antique automobiles to her. She testified that he owned no other antique automobiles. She prepared Dr. Ingram's tax return listing on that tax return one of the vehicles she claims Dr. Ingram had given to her as a gift.

While defendant claims she had bills-of-sale for the automobiles in her possession prior to Dr. Ingram's death and one of those alleged gifts was made in December, 1974, she made no effort to transfer title until six days after Dr. Ingram's death, approximately seven years after the first gift.

Defendant has failed to carry her burden of showing that Dr. Ingram made gifts to her of any of the vehicles during his lifetime.

■ Defendant contends by issue twelve that the Chancellor erred in denying her "Motion to alter or amend the judgment," by issue thirteen, that the Chancellor erred in denying her "Motion to set aside the judgment and grant [her] a new trial," and by issue fourteen, that she is "entitled by way of credit, setoff, counterclaim, equitable considerations and principles to a reduction of or a credit on the judgment rendered against her...."

She essentially seeks the same relief by each of these issues, *i.e.*, a reduction in the amount of the judgment by allowing her credit for money she allegedly spent in preparing the vehicles for sale and for storage charges of "$5.00 per day per vehicle for a total of $44,200.00."

Defendant did not seek recovery of expenses and storage charges at trial. Tenn. R.Civ.P. 13.01 provides:

A pleading shall state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction

or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that a claim need not be stated as a counterclaim if at the time the action was commenced the claim was the subject of another pending action.

The relief sought by defendant in her post-trial motion comes too late. The recovery she seeks is the subject of a compulsory counterclaim. She did not file her counterclaim in the trial court but took the position that she was the owner of the vehicles. It was not until after the Chancellor ruled counter to her insistence that she takes the position that the vehicles were Dr. Ingram's and that she is entitled to recover for expenses incurred by her in getting the vehicles ready for sale and for the storage charges over the years. Her insistence that she is entitled to reimbursement comes too late.

Under issue thirteen, defendant argues that she is relying on "all of her motion for a new trial in this Court." She makes no other argument concerning the motion for a new trial. Notwithstanding the fact that this broad assertion does not conform to Rule 6 of the Tennessee Court of Appeals, we considered each aspect of the motion and found it to be without merit.

Issues twelve, thirteen, and fourteen are without merit.

Defendant's issues fifteen and sixteen complain that the Chancellor erroneously excluded evidence under the "Dead Man Statute," Tenn.Code Ann. § 24–1–203.

She insists that plaintiff waived the provisions of the statute by taking her discovery deposition and "asking her in great detail about the transactions between her and Dr. Ingram and obtaining all the information that could possibly be obtained." In support of her insistence, she cites *Thomas v. Irvin,* 90 Tenn. 512, 16 S.W. 1045 (1891). *Thomas v. Irvin* held that where the defendant took and filed the deposition of plaintiff after examining him as to transactions and conversations he had with the testator, the defendant waived the

Dead Man Statute and that the evidence adduced became competent. The Supreme Court stated that to hold otherwise "would enable one party to search the conscience of his adversary, drag to light his papers and other evidences, and then repudiate the result if the experiment proves unsatisfactory." *Id.* at 513, 16 S.W. at 1045.

*Thomas v. Irvin* was decided in 1891. We know of no statute or rule which allowed "discovery" at that time. Tennessee enacted "The Deposition Law of 1959" which provided for discovery. Tenn.R. Civ.P. 26 and 30 are identical to, but supersede, The Deposition Law of 1959. Tenn.R. Civ.P. 26.02 provides:

Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) IN GENERAL. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

■ Discovery is allowed in an effort to do away with trial by ambush. The purpose of discovery is to bring out the facts prior to trial so the parties will be better equipped to decide what is actually at issue. A litigant would be penalized for utilizing discovery if, by the acquisition of information under the discovery rule, it would render incompetent evidence competent.

■ The taking of discovery depositions does not under the circumstances of this case render competent evidence otherwise incompetent under Tenn.Code Ann. § 24–1–203.

We are of the opinion that the rule in *Thomas v. Irvin* is not inconsistent with our discovery rules. The deposition in *Thomas v. Irvin* was taken for use and not for discovery. As we have stated, we know of no statute or rule which allowed discovery depositions in 1891.

Issues fifteen and sixteen are without merit.

Defendant, by her seventeenth and last issue, insists that the plaintiff's suit is "barred in whole or in part by the three year statute of limitation contained in TCA § 28–3–105."

This issue is without merit for two reasons: One, Tenn.R.Civ.P. 8.03 provides that the defense of the statute of limitations must be affirmatively pleaded in the trial court. Defendant has raised this defense for the first time on appeal. The defense is raised too late.

Two, "[t]his Court considers only such matters as were brought to the attention of the Trial Court and acted upon or pretermitted by the Trial Court." *Cooper v. Queen*, 586 S.W.2d 830, 834 (Tenn.App. 1979) (citations omitted). The defense of the statute of limitations was not brought to the attention of the trial court or acted upon and pretermitted by the trial court.

We have considered each of the issues raised by defendant and find them to be without merit.

The judgment of the Trial Court is affirmed and costs assessed against defendant. The cause is remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

TODD, P.J. (M.S.), and KOCH, J., concur.