**Beatrice E. PETTUS, Plaintiff/Appellant,**

v.

**Gurtie HURST, Defendant/Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 1, 1993.

Permission to Appeal Denied by
Supreme Court May 16, 1994.

Paul A. Bates and Charles W. Holt, Jr., Lawrenceburg, for plaintiff/appellant.

Barbara J. Perutelli, Schulman, LeRoy & Bennett, Nashville, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal stems from an automobile accident at an intersection in the City of Loretto. The driver of one of the automobiles filed a negligence action in the Circuit Court for Lawrence County against the driver of the other automobile. A jury awarded the plaintiff driver $1,241.21. The plaintiff driver takes issue on this appeal with the admission of the testimony of an undisclosed private investigator and with the trial court's denial of her motions for a directed verdict and for an additur. We affirm the trial court's judgment.

I.

Beatrice Pettus was driving a friend to a doctor's appointment on July 30, 1990 when she struck an automobile driven by Gurtie Hurst. The collision occurred in the City of Loretto at the intersection of Second Avenue and State Highway 43. Ms. Hurst was in the process of turning from Second Avenue onto State Highway 43 and did not see Ms. Pettus' automobile approaching because her vision was blocked by several election campaign signs. Ms. Pettus saw Ms. Hurst's automobile in time to reduce her speed but not in time to avoid the accident. Both Ms. Pettus and her passenger were wearing seatbelts.

Ms. Hurst, who was at fault for failure to yield the right of way, was 80–years–old when the accident occurred. Ms. Pettus was a 67–year–old widow whose husband had died in 1988. She had been unemployed since undergoing heart bypass surgery in 1979, and her only income consisted of approximately $500 per month in Social Security benefits. Ms. Pettus had surgery to remove a ruptured disc in 1989 and was still complaining to Dr. Homer Staley of pain in her back, neck, and leg one month before her accident with Ms. Hurst.

Ms. Pettus and Ms. Hurst appeared to be uninjured immediately after the accident. Ms. Pettus seemed to be more concerned about the damage to her automobile than anything else. Hospital examinations both the day of and the day after the accident failed to reveal that Ms. Pettus had received any serious physical injury. Nevertheless, Ms. Pettus complained of pain in her neck, back, and right leg and began wearing a neck brace in public two days after the accident.

Approximately two weeks after the accident, Ms. Pettus returned to Dr. Rex Arendall, the Nashville neurosurgeon who had removed her ruptured disc in 1989. She informed Dr. Arendall that she had been doing very well prior to the automobile acci-

dent and mentioned nothing about her recent complaints to Dr. Staley about pain in her back, neck, and legs. Dr. Arendall suspected that Ms. Pettus' pain stemmed from a sprained neck and back and a previously diagnosed arthritic condition. When an MRI examination revealed no ruptured disc, Dr. Arendall prescribed a pain medication and six weeks of physical therapy at a local hospital. Dr. Arendall heard nothing else from Ms. Pettus for several months.

At some time during this period, Ms. Pettus fell from a chair while attempting to repair a broken smoke alarm in her home. The evidence does not precisely pinpoint when this accident occurred or the extent of Ms. Pettus' injuries stemming from this fall. The record contains no indication that Ms. Pettus consulted one of her many physicians after this accident.

Ms. Pettus returned to Dr. Arendall in February 1991 complaining of pain in her left arm and right leg. Dr. Arendall performed a second back operation on Ms. Pettus in March 1991 after a myelogram revealed another ruptured disc. Ms. Pettus continued to complain of severe pain following this procedure but another myelogram revealed no other ruptured discs or bone spurs.

Ms. Pettus sued Ms. Hurst in July 1991 alleging that the accident and subsequent operation had left her with limited mobility and unable to perform her daily household activities. She originally sought $200,000 in damages but later increased her claim to $500,000. Ms. Hurst conceded that she had been negligent and that the amount of Ms. Pettus' medical expenses was appropriate for the procedures Dr. Arendall performed following the automobile accident. She insisted, however, that the automobile accident was not the proximate cause of Ms. Pettus' injuries.

Ms. Pettus testified during the March 1992 trial that she was in constant pain and that she continued to have debilitating problems with her back and left leg following her second back operation. She stated that she walked with a limp and could not bend her back as much as she could before the accident and also described how she was unable to perform her household chores, to shop for her groceries, or to work in her yard and garden. In contrast to Ms. Pettus' testimony, Ms. Hurst presented the testimony of several witnesses who had observed Ms. Pettus working in her garage and her yard. She also provided pictures taken by a private investigator in January 1992 showing Ms. Pettus bending, moving tree limbs, and lifting a large stump in her yard. Ms. Pettus' passenger testified that Ms. Pettus told her that she wore the neck brace so that people would think her neck was hurt and that Ms. Pettus also suggested that the passenger would have received more compensation had she not settled with the insurance company so quickly.

The jury awarded Ms. Pettus $241.21 for her medical expenses during the first week after the accident and $1,000 for the inconvenience caused by the accident. Ms. Pettus filed a timely motion for new trial or for an additur which the trial court denied in an order filed on April 2, 1992. Ms. Pettus has now perfected this appeal.

## II.

Ms. Pettus first asserts that the trial court should not have permitted Ms. Hurst's private investigator to testify because Ms. Hurst refused to reveal his identity prior to trial. Ms. Hurst responds that she was not required to identify her private investigator because the trial court's local rules did not require her to provide her adversary with the names of her impeachment and rebuttal witnesses. We have determined that Ms. Hurst should have identified her private investigator and should have made his photographs available for inspection prior to the trial. We have also determined, however, that the private investigator's testimony more probably than not did not affect the outcome of the trial.

## A.

Ms. Hurst's attorney deposed Ms. Pettus and Dr. Arendall in November 1991. Suspecting that Ms. Pettus was exaggerating the extent of her disability, Ms. Hurst's attorney hired a private investigator in January 1992 to observe and photograph Ms. Pettus while

she went about her daily routine. The private investigator and an associate observed and photographed Ms. Pettus without her knowledge on January 30 and January 31, 1992.

Even though Ms. Pettus' attorney did not seek any formal discovery from Ms. Hurst prior to February 1992, he must have suspected that Ms. Hurst had retained an investigator by the time the parties exchanged witness lists one week before the trial. When Ms. Hurst did not include the private investigator's name on her witness list, Ms. Pettus' attorney inquired whether she had retained an investigator. Ms. Hurst's attorney responded by stating that she would not reveal her rebuttal or impeachment witnesses.

On February 27, 1992, Ms. Pettus moved to compel Ms. Hurst to reveal the identity of her private investigator and to make his photographs available for inspection. Ms. Hurst opposed the motion on the ground that the local court rules did not require her to provide the names of her impeachment and rebuttal witnesses. During a hearing by conference call on February 28, 1992, the trial court declined to require Ms. Hurst's attorney to identify her private investigator or to produce his pictures but agreed to conduct a jury-out hearing before permitting Ms. Hurst to introduce any of this evidence.

The trial began on March 3, 1992 and recessed for the night after Ms. Pettus concluded her case in chief. The next day, shortly before calling her investigator to the stand, Ms. Hurst's attorney permitted her adversary to examine the investigator's photographs.. Ms. Pettus renewed her objection to the private investigator's testimony during a jury-out hearing, but the trial court overruled her objection and permitted the private investigator to testify as an "impeachment witness."

## B.

■ Ms. Hurst's reliance on the trial court's local rules to justify her refusal to disclose the identity of her private investigator is misplaced for two reasons. First, it confuses her obligation to comply with appropriate discovery requests with her duty to identify the witnesses she intended to call at trial. Second, it places the trial court's local rule in direct conflict with the discovery rules in the Tennessee Rules of Civil Procedure.

■ The Tennessee Rules of Civil Procedure embody a broad policy favoring the discovery of any relevant, non-privileged information. *Wright v. United Servs. Auto Ass'n,* 789 S.W.2d 911, 915 (Tenn.Ct.App. 1990); *Duncan v. Duncan,* 789 S.W.2d 557, 560 (Tenn.Ct.App.1990). Their purpose is to do away with trial by ambush, *Ingram v. Phillips,* 684 S.W.2d 954, 958 (Tenn.Ct.App. 1984), and to rid trials of the element of surprise that often leads to results based not upon the merits but upon unexpected legal maneuvering. *Hood v. Roadtec, Inc.,* 785 S.W.2d 359, 362 (Tenn.Ct.App.1989); *Strickland v. Strickland,* 618 S.W.2d 496, 501 (Tenn.Ct.App.1981).

Tenn.R.Civ.P. 26.02(1) permits parties to discover the identity of all persons having relevant knowledge of any discoverable matter, including the facts relevant to any claim or defense involved in the litigation. However, parties are *not entitled to discover the identities of the persons their adversary intends to call as witnesses at trial in the absence of a local rule or a court order.* *Strickland v. Strickland,* 618 S.W.2d at 499; *Reed v. Allen,* 522 S.W.2d 339, 341 (Tenn.Ct. App.1974).

■ The Tennessee Rules of Civil Procedure govern practice and procedure in all state trial courts. *See* Tenn.R.Civ.P. 1. Trial courts may, however, adopt local practice rules as long as the rules do not conflict with other applicable statutes or rules promulgated by the Tennessee Supreme Court. *Hackman v. Harris,* 225 Tenn. 645, 651, 475 S.W.2d 175, 177 (1972); *Richie v. Liberty Cash Grocers, Inc.,* 63 Tenn.App. 311, 320–21, 471 S.W.2d 559, 563 (1971); Tenn.S.Ct.R. 18; Tenn.Code Ann. § 16–3–407 (1980).

The Twenty–Second Circuit is one of the minority of judicial circuits in Tennessee that have approved a local rule excluding rebuttal and impeachment witnesses from the obligation to exchange witness lists prior to tri-

al.[1]  Local Rule 22(1) requires that at least 72 hours before a trial on the merits in a civil case that

> [t]he names and addresses of witnesses (other than impeachment and rebuttal witnesses) shall be furnished to opposing counsel.

By its own terms, the rule governs the pretrial exchange of witness lists; it has nothing to do with the scope of pretrial discovery permitted by Tenn.R.Civ.P. 26.

Ms. Pettus' motion to compel did not seek the identity of the "impeachment and rebuttal witnesses" Ms. Hurst intended to use at trial but rather requested Ms. Hurst "to reveal any private investigator and allow the inspection of any photographs or video tapes in the possession of the defendant."  The motion sought the identity of persons regardless of whether they were to be called as witnesses and was consistent with Tenn. R.Civ.P. 26.02(1) since the private investigator had personal knowledge of facts relevant to the claims or defenses involved in the case. Thus, Ms. Hurst should have disclosed the identity of her private investigator and should have made his photographs available for inspection when Ms. Pettus requested the information on February 24, 1992.

### C.

■ Ms. Hurst's failure to respond to her adversary's discovery request did not, however, automatically render her private investigator's testimony inadmissible.  Trial courts have broad discretion to fashion sanctions for discovery abuses that are commensurate with the parties' conduct. *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988); *Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 263 (Tenn.Ct.App.1990).  They may permit a witness to testify even if withholding the witness' identity was contrary to the rules of discovery. *Doochin v. United States Fidelity & Guaranty Co.*, 854 S.W.2d 109, 114 (Tenn.Ct.App.1993).  The nature of the sanction depends upon (1) the party's reasons for failing to provide the requested discovery, (2) the importance of the information sought to be discovered, and (3) the time needed to respond effectively to the information. *Strickland v. Strickland*, 618 S.W.2d at 501.

Ms. Hurst's attorney has no legally defensible reason for declining to accede to Ms. Pettus' pretrial request to reveal the identity of her private investigator and to disclose his candid pictures.  However, she provided Ms. Pettus' attorney with the investigator's pictures during the trial before calling him as a witness.  The pictures spoke for themselves. Ms. Pettus' attorney did not request a continuance after seeing the pictures, and, as a practical matter, could not have cross-examined the private investigator more effectively had he been permitted to view the pictures earlier.

The private investigator's testimony and pictures showed Ms. Pettus working in her yard.  Their purpose was to undermine her claim that the accident with Ms. Hurst had left her unable to perform yard work and her other domestic activities.  The pictures were, however, not the only evidence on this subject.  One of Ms. Pettus' friends testified about seeing her doing yard work on two other occasions, and her passenger recounted Ms. Pettus' statement that she had worn a neck brace to give the impression that her neck hurt.

Reversal of a jury verdict is required only when the error involves a substantive right and more probably than not affected the trial's outcome. Tenn.R.App.P. 36(b).  While Ms. Pettus' right to full pretrial discovery under Tenn.R.Civ.P. 26.02 is substantive, we cannot conclude that Ms. Hurst's failure to disclose the identity of her private investiga-

---

1.  Courts in only 12 of Tennessee's 31 judicial districts have adopted local rules excluding rebuttal and impeachment witnesses from the obligation to exchange witness lists prior to trial. Courts in 5 other circuits have adopted rules requiring the exchange of witness lists that do not exclude rebuttal and impeachment witnesses; while one other circuit has adopted a local rule that specifically requires the parties to exchange the names of their rebuttal and impeachment witnesses along with the names of their other witnesses.  Courts in 16 other circuits have no rules with regard to the exchange of pretrial witness lists.  The chancery and circuit courts in three circuits have different rules concerning the exchange of witness lists. *See* Tennessee Bar Ass'n Young Lawyers Div., *Tennessee Local Rules of Court* (1993).

tor affected the verdict. The record contains other competent evidence that the automobile accident did not cause all the physical injuries for which Ms. Pettus was suing Ms. Hurst. Accordingly, we find that permitting the private investigator to testify was, at most, harmless error.

### III.

Ms. Pettus also insists that she was entitled to a directed verdict for the amount of her uncontroverted medical expenses. While Ms. Hurst never contested the amount of Ms. Pettus' medical expenses, she asserted that her negligence did not cause Ms. Pettus to incur all of them. Thus, Ms. Pettus would be entitled to a directed verdict for her medical expenses only if the uncontroverted evidence requires the conclusion that Ms. Pettus would not have incurred these expenses had it not been for Ms. Hurst's negligence.

Directed verdicts are appropriate only when the evidence, viewed reasonably, supports one conclusion. *Goode v. Tamko Asphalt Prods., Inc.*, 783 S.W.2d 184, 187 (Tenn.1989); *Sauls v. Evans*, 635 S.W.2d 377, 379 (Tenn.1982); *Maddux v. Cargill, Inc.*, 777 S.W.2d 687, 691 (Tenn.Ct.App.1989). They are inappropriate when the material facts are in dispute or when substantial disagreement exists concerning the conclusions to be drawn from the evidence. *City of Bartlett v. Sanders*, 832 S.W.2d 546, 549 (Tenn.Ct.App.1991); *Curry v. Bridges*, 45 Tenn.App. 395, 406, 325 S.W.2d 87, 91 (1959).

Appellate courts do not reweigh the evidence when reviewing a trial court's denial of a motion for directed verdict. Instead, they take the strongest legitimate view of the evidence in favor of the motion's opponent, allow all reasonable inferences from the evidence that favor the opponent, and disregard all the evidence to the contrary. *Gann v. International Harvester Co. of Canada, Ltd.*, 712 S.W.2d 100, 105 (Tenn.1986); *Crain v. Brown*, 823 S.W.2d 187, 195 (Tenn.Ct.App. 1991); *Maddux v. Cargill, Inc.*, 777 S.W.2d at 691.

The proof in this case does not support only Ms. Pettus' theory concerning the cause of her injuries. While Ms. Pettus relies heavily on Dr. Arendall's conclusion that the accident with Ms. Hurst caused her back problems, Dr. Arendall did not observe the accident and based his conclusion solely on information provided by Ms. Pettus herself. Expert testimony is not conclusive, *Gibson v. Ferguson*, 562 S.W.2d 188, 189–90 (Tenn. 1976), and the jury may give it whatever weight it deems appropriate in light of all the other facts in evidence. *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 235 (Tenn.1985). Since Ms. Pettus' veracity was suspect, the jury was justified in giving little or no weight to Dr. Arendall's conclusions about the cause of Ms. Pettus' back problems which were based solely on information received from Ms. Pettus.

### IV.

As a final matter, Ms. Pettus contends that the trial court erred by denying her motion for an additur or, in the alternative, for a new trial. Denying a motion for an additur indicates that the trial court approved the jury's verdict. On appeal, we presume that the trial court properly discharged its duty as thirteenth juror, *Holden v. Rannick*, 682 S.W.2d 903, 905 (Tenn.1984), and limit our factual review to determining whether the record contains material evidence that supports the verdict. *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980); *Cary v. Arrowsmith*, 777 S.W.2d 8, 23 (Tenn.Ct.App.1989); Tenn.R.App.P. 13(d).

The trial court specifically stated that it had reviewed the proof as thirteenth juror and that it was not satisfied that Ms. Pettus had met her burden of proof on the issue of causation. The record contains material evidence supporting the jury's conclusion that most of Ms. Pettus' medical expenses following her accident with Ms. Hurst were caused not by the accident but rather by other factors. Accordingly, we find no basis to overturn the trial court's denial of Ms. Pettus' requests for an additur or for a new trial.

### V.

We affirm the judgment and remand the case to the trial court for whatever other proceedings may be required. We also tax

the costs of this appeal to Beatrice E. Pettus and her surety for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.