IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2001 Session

## MELANIE DEE CONGER v. TIMOTHY D. GOWDER, M.D.

**Appeal from the Circuit Court for Anderson County**
**No. 99LA0267     James B. Scott, Jr., Judge**

 **FILED MARCH 29, 2001** 

**No. E2000-01584-COA-R3-CV**

---

In this medical malpractice case arising out of surgery, the trial court granted the defendant summary judgment on the plaintiff's claims of surgical negligence and lack of informed consent. The plaintiff appeals, arguing (1) that disputed issues of material fact exist that make summary judgment inappropriate and (2) that the trial court erred in refusing to allow the plaintiff to take the depositions of the defendant and another physician pending a hearing on the defendant's motion for summary judgment. Because we find that the trial court erred in refusing to allow the plaintiff to take the subject depositions, we vacate the grant of summary judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Ronald L. Grimm and William F. Searle, III, Knoxville, Tennessee, for the appellant, Melanie Dee Conger.

Debra A. Thompson, Knoxville, Tennessee, for the appellee, Timothy D. Gowder, M.D.

**OPINION**

I.

The defendant, Timothy D. Gowder, M.D., specializes in the practice of obstetrics and gynecology in Oak Ridge. On June 1, 1998, the plaintiff, Melanie Dee Conger, presented herself at Dr. Gowder's office complaining of persistent pain in the left lower quadrant of her abdomen. After an examination, Dr. Gowder discussed with Conger the option of performing laparoscopic surgery[1] in order to identify and remedy the cause of the pain. Conger consented to the proposed surgery.

---

[1]Laparoscopic surgery is a procedure in which a small viewing instrument is inserted in the abdomen.

Dr. Gowder performed the surgery on July 13, 1998. During the procedure, Dr. Gowder identified and removed adhesions that had been caused by earlier abdominal surgery. Conger was discharged from the hospital on July 16, 1998.

The day after her discharge, Conger returned to the hospital complaining of abdominal pain, nausea, and vomiting. After being evaluated by the emergency room physician, Conger was seen by Dr. Thomas Metcalf, a gynecologist, and Dr. Glen Weight, a general surgeon. Conger was readmitted to the hospital, and Dr. Weight performed an exploratory laparotomy[2] on July 18, 1998. The laparotomy revealed that a portion of Conger's bowel was ischemic, or dead from a lack of blood supply. Dr. Weight removed the ischemic portion of Conger's bowel.

## II.

On July 13, 1999, the one-year anniversary of Dr. Gowder's surgery, Conger filed a complaint against the doctor alleging that he was guilty of negligence that constituted medical malpractice in that (1) he failed to "us[e] due care to avoid cutting essential blood vessels when dissecting adhesions in Plaintiff's abdominal and pelvic cavities and to avoid causing other injury to the small bowel" and (2) that he "fail[ed] to discover and repair any injury caused by the surgery."

Dr. Gowder filed an answer on August 2, 1999, following which he filed a motion for summary judgment on December 23, 1999. In support of his motion, Dr. Gowder filed his own affidavit, in which he states that he "know[s] the recognized standard of acceptable professional practice for physicians practicing gynecology in Oak Ridge, Tennessee or a similar community." He proceeds to deny the plaintiff's allegations of negligence, malpractice, and deviation from the recognized standard of care. He asserts that during the pre-operative office visit, "[a]ll risks and rewards of the surgery were discussed with Ms. Conger at length." Dr. Gowder states that in his opinion the plaintiff's injuries were not caused by any negligent act or omission on his part. In support of this general statement, Dr. Gowder notes that the ischemic portion of Conger's bowel removed by Dr. Weight was examined by a pathologist and that no perforation or burns were found. Going to the heart of the plaintiff's claim of malpractice, Dr. Gowder states the following:

> I complied with the standard of care in Melanie Conger's surgery. I carefully and meticulously inspected, applied careful traction, clipped and dissected the adhesive mass in Ms. Conger's pelvic and abdominal cavity. I very thoroughly inspected the area in which I was operating as I was performing the removal of Ms. Conger's adhesions. No bleeding was noted at the time of finishing the procedure. Furthermore, there was never any contact made with the bowel surface by any instruments I used during this procedure. I inspected Ms. Conger's abdomen during the surgery on multiple occasions to assure that no contact was made with the bowel surface.

---

[2]A laparotomy is open conventional surgery in which the abdomen is entered through an incision.

It is my opinion with a reasonable degree of medical certainty that I complied at all times with the recognized standard of acceptable professional practice for gynecologists performing a laparoscopic adhesiolysis including my pre-operative and post-operative care of Ms. Conger. In addition, it is my opinion within a reasonable degree of medical certainty that the damage claimed in the Complaint were [sic] not caused by any breech [sic] of the standard of care by me.

Dr. Gowder also submitted the affidavit of Dr. Weight, who opined that Conger's ischemic bowel was not caused by the procedure performed by Dr. Gowder.

Following a pretrial conference that apparently occurred on February 7, 2000, the trial court entered an order requiring Conger to furnish the defense the names of her expert witnesses by March 31, 2000, the date on which the motion for summary judgment was then scheduled to be heard. On March 10, 2000, Conger, through counsel, served a notice on the defendant's counsel that she intended to take the depositions of Dr. Gowder and Dr. Weight on March 22, 2000. Dr. Gowder responded on March 13, 2000, by filing a motion for a protective order, seeking to quash Conger's notice. In his motion, Dr. Gowder asserts that Conger's attempt to take his deposition was "an attempt to buy time," and was intended "to drag this case out indefinitely" and to "postpone [his] Motion for Summary Judgment." Dr. Gowder also asserted that he would be out of town the week his deposition was scheduled and that Conger would not suffer any unfair prejudice by taking the deposition at another time. The trial court granted the protective order at a hearing on March 27, 2000,[3] directing that the requested depositions would not be taken *prior to the time the trial court ruled on the defendant's summary judgment motion*. At the same hearing, the trial court permitted Conger to amend her complaint to allege that Dr. Gowder was negligent in failing to inform her "of the risk of serious injury to her bowel and permanent impairment of her bowel function," and to further allege that she would have chosen a different course of treatment had she been fully informed of the risks. Dr. Gowder filed an answer, denying Conger's new allegations; however, he did not file any new material in support of his summary judgment motion. At the time of the hearing on the defendant's motion for a protective order, the trial judge advised the parties that he would not be able to hear the motion for summary judgment on March 31, 2000, because he was to undergo surgery and could not be available on that date. The hearing was continued to April 24, 2000.

Conger filed a response to Dr. Gowder's motion for summary judgment on April 24, 2000. She supported her response with her personal affidavit in which she states that Dr. Gowder did not mention bowel injury or the need to remove a part of her bowel as possible risks of the procedure. She further states that had she been informed of the risk of injury to her bowel, she would have chosen a different course of treatment. Conger also submitted the affidavits of Dr. Cleland Blake and Dr. Jonathan S. Ehrlich. Dr. Blake states in his affidavit that he is a physician licensed in Tennessee and that it is his opinion that the injury to Conger's bowel was caused at the time of the surgery performed by Dr. Gowder. Dr. Ehrlich states in his affidavit that he is a licensed physician

---

[3]The record does not contain an order memorializing the trial court's decision to grant a protective order.

-3-

practicing obstetrics and gynecology in the state of Georgia. He states that it is his opinion that the injury to Conger's bowel "was the direct result of the laparoscopic surgery performed by Dr. Gowder...." He goes on to state, however, that there is no evidence in Dr. Gowder's operative report or the subsequent operative findings that Dr. Gowder deviated from "the recognized standard of care" in his operating technique and that "[t]he bottom line is that bowel injury is an uncommon but recognized complication of laparoscopy and not in and of itself a sign of malpractice." On the issue of informed consent, Dr. Ehrlich states that "[f]ailure to obtain informed consent is a deviation from the recognized standard of care" and that "if Dr. Gowder did not obtain informed consent, this would be a deviation from the recognized standard of care." Dr. Ehrlich does not state that he is familiar with the applicable standard of care in Oak Ridge or a similar community.[4]

The trial court granted Dr. Gowder's motion for summary judgment, finding that Dr. Ehrlich's affidavit was deficient because it fails to address whether he is familiar with the applicable standard of care required of a physician practicing Dr. Gowder's specialty in Oak Ridge, Tennessee. This appeal followed.

III.

Medical malpractice actions in Tennessee are governed by T.C.A. § 29-26-115 (2000), which provides, in pertinent part, as follows:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the claimant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
>
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the

---

[4]Dr. Blake's affidavit only addresses the issue of causation.

person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

With respect to a complaint alleging lack of informed consent, T.C.A. § 29-26-118 (2000) provides as follows:

In a malpractice action, the plaintiff shall prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices and in similar communities.

IV.

We do not find it necessary to judge the appropriateness of the trial court's grant of summary judgment. This is because we agree with the plaintiff that the trial court erred in prohibiting her from taking the depositions of Drs. Gowder and Weight. We have stated the facts and procedural history of this case in some detail in order to place in context the trial court's decision to grant the defendant a protective order.

V.

As previously indicated, the trial court granted Dr. Gowder a protective order, thereby preventing Conger from deposing Dr. Gowder and Dr. Weight while the defendant's motion for summary judgment was pending. A grant of a protective order relative to discovery is a matter that addresses the sound discretion of the trial court, and we will not reverse a trial court's decision absent an abuse of that discretion. *See **State, Dep't of Commerce and Ins. v. FirstTrust Money Servs., Inc.,** 931 S.W.2d 226, 230 (Tenn. Ct. App. 1996). However, the trial court's grant of a protective order is not immune from appellate review merely because it is a discretionary matter:

In light of the rules' broad policy favoring discovery, the party opposing discovery must demonstrate with more than conclusory statements and generalizations that the discovery limitations being sought are necessary to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. A trial

court should decline to limit discovery if the party seeking the limitations cannot produce specific facts to support its request.

A trial court should balance the competing interests and hardships involved when asked to limit discovery and should consider whether less burdensome means for acquiring the requested information are available. If the court decides to limit discovery, the reasonableness of its order will depend on the character of the information being sought, the issues involved, and the procedural posture of the case.

*Duncan v. Duncan,* 789 S.W.2d 557, 561 (Tenn. Ct. App. 1990) (citations and quotation marks omitted).

Discovery has been an integral part of pre-trial preparation in Tennessee since the enactment of the Discovery Law of 1959. *See Harrison v. Greeneville Ready-Mix, Inc.*, 220 Tenn. 293, 301-02, 417 S.W.2d 48, 51-52 (1967). Discovery is designed to eliminate "trial by ambush." *Id*. *See also Pettus v. Hurst*, 882 S.W.2d 783, 786 (Tenn. Ct. App. 1993); *Ingram v. Phillips*, 684 S.W.2d 954, 958 (Tenn. Ct. App. 1984) ("Discovery is allowed in an effort to do away with trial by ambush."). It should be allowed liberally in order to achieve its desired effect. *Harrison*, 417 S.W.2d at 51. "The Tennessee Rules of Civil Procedure embody a broad policy favoring the discovery of any relevant, non-privileged information." *Pettus*, 882 S.W.2d at 786.

Dr. Gowder's motion for a protective order sets forth two reasons for his request. First, he makes general and conclusory statements to the effect that the plaintiff's attempt to take his deposition is a delaying tactic. We find these conclusory allegations in this case to be unsupported by facts and insufficient to justify the granting of a protective order. *See Duncan*, 789 S.W.2d at 561. Second, Dr. Gowder asserts that he had planned to be out of town during the week the deposition was scheduled. While this fact certainly may have been a proper basis for rescheduling the deposition, it does not justify completely prohibiting Conger from deposing Dr. Gowder or Dr. Weight prior to the resolution of the summary judgment motion.

A defendant filing a motion for summary judgment has the burden of demonstrating that he or she is entitled to thwart the plaintiff's desire for a trial on the merits by clearly and conclusively demonstrating that the material facts are undisputed and that those facts show that the moving party is entitled to judgment "on the papers." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). In the instant case, the defendant is attempting to meet his burden by way of his affidavit and the affidavit of Dr. Weight. The trial court appears to have decided that the plaintiff should be precluded from testing the truthfulness and accuracy of the testimony of these affiants until such time as she can produce countervailing facts from sources other than Drs. Gowder and Weight. The problem with this approach is that it forces the plaintiff to accept the defendant's supporting affidavits at face value. This puts the proverbial cart before the horse. What if the defendant's supporting affidavits are not truthful? What if the opinions expressed in them are based on erroneous facts? Since it is the defendant – and not the plaintiff – who has the initial burden on summary judgment, generally

speaking the plaintiff has the right to test the defendant's supporting affidavits by careful cross-examination during a discovery deposition. If, as is sometimes the case, the plaintiff, through vigorous cross-examination, can completely destroy the effectiveness of the defendant's affidavits, he or she will not be required to present countervailing materials because there will be nothing to rebut and the motion will fail by its own deficiency. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). While this may not happen often, a plaintiff has the right to try. Thus, the plaintiff in the instant case has the right to discover the doctors whose affidavits are being used to block the plaintiff's attempt to present her case to a jury. Even if the plaintiff is unable to completely destroy the effectiveness of the affidavits, her discovery efforts should enable her to "flesh out" the facts and inquire into the doctors' opinions. All of this is calculated to be of benefit to the plaintiff as she prepares to resist the defendant's motion. This is one of the many purposes of discovery.

We find that the grant of the protective order was error; accordingly, we remand this case in order to afford the plaintiff the opportunity to take the depositions of Drs. Gowder and Weight, after which the trial court can further consider the defendant's motion for summary judgment.

## VI.

The judgment of the trial court granting the defendant summary judgment is vacated. This case is remanded for further proceedings consistent with this opinion, pursuant to applicable law. Costs on appeal are taxed to the appellee, Timothy D. Gowder, M.D.

_____
CHARLES D. SUSANO, JR., JUDGE