IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 21, 2002 Session

## JOHN C. FLOWERS v. JOSEPH E. TURNER and CONNIE TURNER

**An Appeal from the Circuit Court for Madison County**
**No. C 98-249-I   Roy B. Morgan, Jr., Judge**

_____

**No. W2001-01429-COA-R3-CV - Filed January 14, 2003**

_____

This is a personal injury case arising out of an automobile accident. The plaintiff truck driver, during the course of his employment, was involved in an automobile accident with the defendant. The plaintiff sued the defendant based on the injuries he sustained in the accident. The defendant stipulated as to liability, and the case went to trial on the issue of damages. After trial, the jury returned a verdict in favor of the plaintiff for past and future pain and suffering and past medical bills. The trial court entered a judgment on the verdict and denied the plaintiff's motion for an additur and/or a new trial. The plaintiff appeals, asserting that there was no material evidence to support the low amount of the jury's verdict, and appealing the order allowing the defendant to offset the verdict by the amount paid in satisfaction of the workers' compensation lien. We affirm the decision of the learned trial judge, finding material evidence in the record to support the jury's verdict and affirming the order permitting the offset.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Mitchell G. Tollison, Humboldt, Tennessee, for the appellant, John C. Flowers.

Howard B. Hayden, Memphis, Tennessee, for the appellees, Joseph E. Turner and Connie Turner.

### OPINION

On August 8, 1997, Plaintiff/Appellant John Flowers ("Flowers") was involved in an automobile accident with Defendant/Appellant Joseph E. Turner ("Turner") in Madison County, Tennessee. Flowers and Turner were traveling in opposite directions on a two-lane road. Turner was driving a Ford Taurus owned by his mother, Defendant/Appellant Connie Turner, and Flowers was driving an eighteen-wheel truck in the course of his employment as a truck driver with American Freightways, Inc. ("American Freightways"). The road was slick from rain. While both parties were

negotiating a curve going in opposite directions, Turner lost control of his car and hit Flowers' truck, knocking off the front of Flowers' truck and breaking the truck's axle.

The next day, on August 9, 1997, Flowers went to the Jackson-Madison County General Hospital because he was "extremely sore." Subsequently, Flowers was treated by his company authorized physician, Paul Schwartz, M.D. ("Dr. Schwartz"). For three or four months after the accident, Flowers underwent physical therapy for pain in the left side of his neck and his left shoulder. Flowers testified that he did not miss any work because of the accident, though his duties were restricted.

When physical therapy failed to resolve Flowers' problems, Dr. Schwartz referred him to Glenn Barnett, M.D. ("Dr. Glenn Barnett"), a neurosurgeon, for further evaluation. Dr. Glenn Barnett diagnosed Flowers as having a preexisting herniated disc at C-6 that was aggravated by the accident. Surgery was neither suggested nor performed at that time. On May 4, 1998, Flowers told Dr. Glenn Barnett that he had improved and had little or no neck pain, and he requested a full release to return to work without restrictions. Realizing that he did not want to continue performing all the physical functions of his job at American Freightways, Flowers left American Freightways and took a job with AIM Trucking ("AIM") in June or July 1998. Flowers said that the new job did not involve loading or unloading freight. Flowers' salary at AIM was approximately the same as his salary at American Freightways.

On October 21, 1998, Flowers returned to see Dr. Glenn Barnett, complaining of constant pain in his neck and occasional pain across both his shoulders. Dr. Glenn Barnett treated Flowers and ultimately discharged him without restrictions, but gave him a permanent impairment rating of 5% and a recommendation that he engage only in light duty work as opposed to truck driving.

On March 15, 1999, Flowers visited Robert Barnett, M.D. ("Dr. Robert Barnett"), for evaluation. Dr. Robert Barnett assigned Flowers a 10% permanent impairment rating and placed a one-time lifting restriction on him to lift no more than 30 to 40 pounds. Both Dr. Robert Barnett and Dr. Glenn Barnett causally related Flowers' aggravated herniated disc to the accident.

With respect to future medical expenses, Dr. Glenn Barnett testified that it was "more likely than not" that Flowers would require disc surgery in the future. He acknowledged, however, that the future surgery "may come to pass if his symptoms warranted and worsened as time goes on," and said that "he may never need to have [surgery] if his symptoms are not bad enough." Dr. Robert Barnett was less committal, stating that "I don't know [if Flowers will require disc surgery]. I don't think anybody really knows."

After the accident with Turner's vehicle, Flowers sustained other injuries. On April 25, 1998, Flowers was struck in his right shoulder by a thrown box weighing thirty-five pounds. Flowers sought emergency room treatment for this injury, but explained that the only reason he sought such treatment was because his employer required him to do so for workers' compensation purposes. On May 3, 1999, Flowers sprained his ankle, and sought emergency room attention for

this as well. On September 1, 1999, Flowers sustained a workers' compensation injury when he stepped from a three-foot drop. This injury required emergency room treatment as well as two follow-up visits to a physician. None of these injuries were reported to Flowers' treating physician, Dr. Glenn Barnett. Flowers explained that he did not tell Dr. Glenn Barnett about the subsequent incidents because they were "minor." When Dr. Glenn Barnett was asked in his deposition whether Flowers being struck on the shoulder by a thirty-five pound box would possibly aggravate or cause progression of his herniated disc, Dr. Glenn Barnett replied in the affirmative.

On August 6, 1998, Flowers filed this lawsuit against Turner and his mother (collectively "the Turners") for his personal injuries resulting from the automobile accident.[1] On December 21, 2000, the parties filed a stipulation in which the Turners stipulated as to liability and the application of the family purpose doctrine. As a result, Connie Turner was liable for the damages caused by her son's negligent conduct. Also on December 21, 2000, the parties filed a stipulation, which read as follows:

> In his deposition on April 27, 1999, Dr. Glenn Barnett testified that it is likely that [Flowers] will undergo cervical disc surgery in the future. The following are reasonable and necessary costs of such surgery:
>
> | 1. Neurologist | $8,338.00 |
> |---|---|
> | 2. Anesthesiologist | $1,375.00 |
> | 3. Hospital charge | $7,300.00 |
> | 4. Physical therapy | $2,600.00 |
> | | _____ |
> | | $19,613.00 |

The case was tried before a jury on February 28, 2001, and March 1, 2001. Flowers testified as set forth above, and the deposition of Dr. Glenn Barnett and Dr. Robert Barnett were admitted into evidence. After the conclusion of trial on March 1, 2001, the jury returned a verdict in favor of

---

[1]On May 17, 1999, Flowers moved to amend his complaint to add as a defendant "unnamed but served Defendant the uninsured/underinsured motorist carrier St. Paul Fire and Marine Insurance Company," and to increase the ad damnum of the complaint from $100,000 to $500,000. On September 30, 1999, that motion was granted by agreement of the parties. On February 10, 2000, however, Flowers filed a notice of non-suit as to the added defendant, St. Paul Fire and Marine Insurance Company. Accordingly, on February 14, 2000, the trial court dismissed St. Paul from the lawsuit without prejudice.

Flowers, awarding damages in the total amount of $26,500. The special jury verdict form categorized the damages as follows:

NON-ECONOMIC DAMAGES:

(a) Pain and Suffering- Past $ 5,000.00

(b) Pain and Suffering- Future $ 15,000.00

(c) Permanent Impairment $ 0.00

(d) Loss of Ability to Enjoy Life-Past $ 0.00

(e) Loss of Ability to Enjoy Life-Future $ 0.00

ECONOMIC DAMAGES:

(f) Medical Treatment- Past $ 6,500.00

(g) Medical Treatment- Future $ 0.00

(h) Loss of Earning Capacity-Past $ 0.00

(I) Loss of Earning Capacity-Future $ 0.00

TOTAL DAMAGES $ 26,500.00

On March 29, 2001, the Turners filed a motion to offset or credit the jury verdict with $7,510.39,[2] which the Turners' insurance carrier had paid directly to Flowers' former employer, American Freightways, to reimburse the company for medical bills paid to Flowers or on Flowers' behalf on his workers' compensation claim stemming from the automobile accident.[3] On the same day, Flowers filed a motion for an additur or, alternatively, for a new trial. In that motion, Flowers argued that the jury's failure to award any amount with respect to future medical expenses, permanent impairment, past pain and suffering, and past and future loss of earning capacity was contrary to the evidence submitted at trial, and that the amount actually awarded was so low as to be outside the realm of reasonableness. In addition, Flowers claimed that the jury's failure to award an amount for future medical expenses was contrary to the parties' stipulation that the cost of cervical disc surgery would be $19,613.00. In the alternative, Flowers argued that the trial court

---

[2]The amount of credit requested was actually $8,010.39, but $500 represented the cost of a deposition which was not paid pursuant to American Freightways' statutory lien.

[3]The motion asserted that the Turners' insurance carrier was required to reimburse American Freightways pursuant to Tennessee Code Annotated § 50-6-112.

should, in its role as thirteenth juror, find that the jury's verdict was not supported by the weight of the evidence and order a new trial. On April 11, 2001, Flowers filed a response to the Turners' motion for an offset, arguing that the requested offset should be denied because the Turners' payment was voluntary and because they did not plead the payment as an affirmative defense pursuant to Tennessee Rule of Civil Procedure 8.03.

On April 30, 2001, the trial court entered a judgment in accordance with the jury's verdict. On June 4, 2001, the trial court entered an order granting the Turners credit for the advanced payment of $7,510.39 made to American Freightways to satisfy the workers' compensation lien. Thus, the total judgment awarded to Flowers was $18,989.61 ($26,500 minus $7,510.39) plus discretionary costs. Also on June 4, the trial court entered an order denying Flowers' motion for an additur and/or a new trial. Flowers now appeals from the trial court's orders.

On appeal, Flowers argues that the trial court erred in denying his motion for an additur or for a new trial, and in granting the Turners' motion for an offset. He argues further that there was no material evidence to support the jury's failure to award an amount for future medical expenses, particularly in light of the parties' stipulation that the amount of such expenses would be $19,613. Flowers also asserts that there was no material evidence to support the jury's failure to award damages for permanent anatomical injury and its failure to award damages for past or future lost earning capacity. Flowers asserts that the jury's award was so inadequate that the trial court should have suggested an additur in an amount that would have reasonably compensated him for his injuries. Finally, Flowers argues that the Turners were required to plead the claimed offset as an affirmative defense, and that their failure to do so resulted in a waiver of their claim for an offset. In the alternative, Flowers contends that the trial court erred in offsetting his recovery for $7,510.39, when the jury awarded only $6,500 in medical expenses.

When the trial court approves the jury's verdict and denies a motion for an additur and/or a new trial, "we presume that the trial court properly discharged its role as thirteenth juror, *Holden v. Rannick*, 682 S.W.2d 903, 905 (Tenn. 1984), and limit our factual review to determining whether the record contains material evidence that supports the verdict." *Pettus v. Hurst*, 882 S.W.2d 783, 788 (Tenn. Ct. App. 1993); *see* Tenn. R. App. P. 13(d). The appellate court does not reweigh the evidence or determine where the preponderance lies. *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994). Rather, absent an error of law, a judgment on a jury verdict will be set aside only where the record contains no material evidence to support the verdict. *See Foster v. Bue*, 749 S.W.2d 736, 741 (Tenn. 1988).

Flowers first argues that there was no material evidence to support the jury's failure to award any reasonable future medical expenses, particularly in light of the parties' agreement that $19,613 would be the reasonable and necessary cost of cervical disc surgery. He argues that Dr. Glenn Barnett testified that it was more likely than not, i.e. probable, that he would have to undergo surgery for his herniated disc in the future, and that his testimony was uncontradicted in the record. From our review of the record, however, Dr. Glenn Barnett's testimony that Flowers will likely undergo surgery in the future is undercut to some extent by his other statements, such as "[Flowers] may

never need to have [surgery] if his symptoms are not bad enough." Therefore, his testimony overall was less clear than Flowers asserts, and the jury was entitled to view his testimony as a whole. Also, the jury was entitled to consider Dr. Robert Barnett's lack of conviction that such surgery would be required in the future, particularly his statement that "I don't know [if Flowers will require disc surgery]. I don't think anybody really knows ."

Furthermore, the jury was entitled to consider Dr. Glenn Barnett's opinion regarding causation as being undermined in part by the fact that Flowers never told him about the thirty-five pound box striking his shoulder in April 1998. From this, the jury was entitled to conclude that, even if it were likely that Flowers would undergo surgery in future, the surgery would not be caused solely by the automobile accident. ***See Pettus***, 882 S.W.2d at 788 (upholding a jury verdict when the record contained material evidence that the plaintiff's medical expenses were caused by factors other than the automobile accident). Thus, under these circumstances, we find that material evidence supported the jury's decision not to award damages for future medical expenses.

We also find that there was material evidence to support the jury's failure to award damages for permanent anatomical impairment. Flowers notes that Dr. Glenn Barnett gave Flowers a 5% permanent disability rating, and that Dr. Robert Barnett gave Flowers a 10% disability rating. Flowers argues that, because this evidence is uncontradicted, the jury was obligated to award him an amount for at least a portion of his permanent impairment. Again, however, there is evidence in the record indicating that the permanent disability could have been caused, or at least aggravated, by subsequent events of which Dr. Glenn Barnett was unaware. The jury was entitled to conclude from this evidence that any permanent disability was not caused by the accident, and consequently, that Flowers was not entitled to recover for permanent disability.

Flowers also argues on appeal that there was no material evidence to support the jury's refusal to award him damages for lost earning capacity, past or future. Flowers testified that he modified his work activities because of his injuries from the accident, and that he eventually left his job at American Freightways to take another job that required less manual labor. He claimed that, after he left his job at American Freightways, he earned approximately half of the amount he had earned as a truck driver. Flowers offered evidence that he did not have "readily transferrable" job skills, that he was restricted by 35%-40% in the job market, and that he would earn approximately $21,000 less per year for 14 years, which amounted to $213,857.52. However, Flowers acknowledged that he missed no time from American Freightways due to the accident, and that he earned more money the year after the accident than he did the year of the accident. The record includes evidence that Flowers lost his job at AIM in 1999 because the company closed down, and that he later lost a job as a dispatcher with the Tennessee Highway Patrol because the office in which he was working closed down. Thus, based on the evidence submitted at trial, the jury was entitled to conclude that any loss in earning capacity was due to factors other than the subject accident. Therefore, in light of the record, we must conclude that there is material evidence to support the jury's refusal to award Flowers damages for loss of past and future earning capacity.

Flowers also asserts on appeal that an additur was necessary because the jury's verdict was so inadequate as to shock the conscience of the Court or, in the alternative, the jury's verdict was based on passion prejudice, or unaccountable caprice. Based on our review of the record, we conclude that the jury's award of $26,500 is not disproportionate to Flowers' injuries and does not shock the conscience of the Court. Thus, we conclude that the trial court did not err in declining to suggest an additur under the circumstances.

Finally, Flowers argues that the trial court erred in allowing the Turners a $7,510.39 offset for amounts paid in satisfaction of the workers' compensation lien. First, Flowers contends that the Turners' claim must be considered waived because they did not plead the offset as an affirmative defense or a compulsory counterclaim. Flowers cites no law in support of this assertion. We conclude that the money paid by the Turners' insurance carrier to satisfy the workers' compensation lien was merely an advance payment of judgment. In such a situation, the Turners are excused "from pleading or proving partial payment by [the] insurer, which was not a defense as to liability, but a mitigation in [the] event of liability." *Howard v. Abernathy*, 751 S.W.2d 432, 435 (Tenn. Ct. App. 1988); *see Melton v. Firestone Tire & Rubber Co.*, 625 S.W.2d 713, 714 (Tenn. 1981) (in a workers' compensation context, holding that set-off is not an affirmative defense); *see also Brown v. City of Memphis*, No. 02A01-9803-CV-00069, 1998 WL 742385, at *5 (Tenn. Ct. App. Oct. 22, 1998) (agreeing with the observation in *Howard* that the making of advance payments is "a humanitarian practice that should be encouraged and commended").

Flowers also argues that the amount of the offset should not have exceeded the amount of medical expenses proven at trial, or $6,500.[4] Again, Flowers cites no law to support this assertion. Tennessee Code Annotated § 50-6-112 gives an injured worker the right to accept workers' compensation benefits from his employer and also seek to recover for his injuries from a third-party tortfeasor. Section 50-6-112(c)(1) gives an employer a subrogation lien against such recovery "to the extent of actual payment of benefits." *Cross v. Pan Am World Servs., Inc.*, 749 S.W.2d 29, 30 (Tenn. 1987); Tenn. Code Ann. § 50-6-112(c)(1) (1999). Because the trial court gave the defendants an offset in an amount equal to the actual payment of benefits, this argument is without merit.

Accordingly, the decision of the trial court is affirmed. Costs are to be taxed to the appellant, John C. Flowers, and his surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE

---

[4]In his reply brief, Flowers asserts that the offset should also be reduced by attorney's fees he paid in attempting to recover on his workers' compensation claim, thereby reducing the allowable offset to $4,335.50. This argument is without merit.